413 So.2d 927 (1982)
E. R. ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert, d/b/a the Iberville South.
Alfred ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert, d/b/a the Iberville South.
Carlysle ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert, d/b/a the Iberville South.
Nos. 14639, 14640 and 14641.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied May 25, 1982.
*928 Robert L. Kleinpeter, Baton Rouge, for plaintiffs-appellants E. R. Roshto, Alfred Roshto and Carlysle Roshto.
Houston C. Gascon, III, Plaquemine, for defendants-appellees Gary J. Hebert and Joyce S. Hebert d/b/a the Iberville South.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
The issue presented is whether or not defendants, who reprinted an article concerning plaintiffs' criminal convictions which occurred twenty-five years before, are liable for the invasion of plaintiffs' privacy. We conclude defendants are liable and therefore we reverse the judgment of the trial court.
The respective plaintiffs, E. R. Roshto, Alfred Roshto and Carlysle Roshto (herein *929 referred to as the Roshto brothers), were charged and convicted of cattle theft in Iberville Parish in 1952. Each served one year in the penitentiary, one year of probation and was granted a full pardon. The brothers then married, raised families, and have been law-abiding citizens to this day. In 1973 The Iberville South, a local newspaper published in Plaquemine, printed a "Page From Our Past"[1] which consisted of the front page of the newspaper dated April 4, 1952. This page contained an article concerning the trial of the Roshto brothers for cattle theft. Embarrassed by this disclosure, E. R. Roshto, in behalf of all three brothers, went to the newspaper's office to see the manager. An employee advised the manager was not in but the editor was in and would see him. After waiting a few minutes, he spoke with a man who identified himself as the editor. Mr. Roshto requested no other articles about the cattle theft be published. This person then assured him if any other articles on the subject were reprinted, the Roshto name would be blocked out.
On August 30, 1977, The Iberville South reprinted another "Page From Our Past" which included an article showing the Roshto brothers had lost their appeal and had been sentenced to prison. The Roshto name had not been blocked out. The brothers then each filed a suit for invasion of privacy, based upon the second of the two articles, and the three suits were consolidated for trial.[2]
A trial was held wherein each brother testified and admitted the substance of the articles was true and accurate. E. R. Roshto testified concerning his conversation with the "editor" of the paper and told of the assurance the Roshto name would not appear again. Defendant, Gary J. Hebert, stated he was the only editor and had never talked to Mr. Roshto nor had any of his employees told him of Mr. Roshto's request.
In brief oral reasons the trial court stated plaintiff could not prevail because all parties admitted the truth of the articles and truth was an absolute defense. As plaintiffs-appellants point out in their brief, the petition asserts a cause of action for invasion of privacy rather than for defamation. While truth is an absolute defense to suits for defamation, it is not a defense in an action for invasion of privacy.
The right of privacy is discussed at length by William L. Prosser in his treatise, Law of Torts, 4th edition (1971). He notes there are four circumstances which give rise to an action for the invasion of privacy. These are:
1. The defendant appropriates the name or likeness of the plaintiff for the defendant's own benefit.
2. The defendant intrudes upon the plaintiff's physical solitude.
3. The defendant publicizes private information about the plaintiff.
4. The defendant publicizes information which puts plaintiff in a false light in the public eye.
The third category is the one that concerns us here.
We note the issue presented is res nova in this state. There are only a limited number of cases dealing with causes of action based on invasion of privacy and even fewer that involve the public disclosure of private facts.
Defendant relies heavily on the case of Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979), which holds a plaintiff cannot recover when a newspaper publishes something that is available for public view. In Jaubert, the newspaper published a picture of plaintiffs' home with a caption reading, "One of Crowley's stately homes, a bit weatherworn and unkempt, stands in the shadow of a spreading oak." The house *930 was not identified as to address or owner. The Supreme Court refused to allow plaintiffs to recover on the theory of public disclosure of private facts. The court stated there was no right of privacy to things in the public view and the only question for the court was "whether the photograph and words of description depicted a matter which was actually within the plaintiffs' protected zone of privacy." The court stated:
"It is clear from the record that the Jauberts' home was plainly visible from the public street, and that passersby were presented with a view of the property which was identical to that published by the defendant. Therefore, plaintiffs had no right to privacy, regarding the house and its condition...."
Although the facts in Jaubert and in the instant case make the two easily distinguishable, we can agree with the reasoning put forth in Jaubert. The court concluded the home and its condition were not within plaintiffs' "protected zone of privacy" because the home was on public display and plainly visible to all those who passed by. We use this reasoning to conclude the Roshto brothers' criminal histories were indeed within their "protected zone of privacy" because although the convictions were matters of public record, they were twenty-five years old and not generally known to the current population of the community. Certainly any curious neighbor could have sought out the criminal records of Iberville Parish and thereby obtained this same information. However, the likelihood that anyone would do so is virtually nil and it cannot be said the records were on public display and plainly visible to all who passed by. The fact the convictions were of public record is no justification for defendants "spreading the word" to the entire community twenty-five years later without some independent reason to do so. A convicted, pardoned and rehabilitated person is entitled to assume the "case is closed" once a reasonable period of time has passed and he is involved in no other illegal activities. This information, regardless of its existence on the public records, becomes private information by virtue of the passage of time and the lack of further criminal activity.
Further, we do not feel constrained to deny recovery, as did the Jaubert court, due to the extreme difference in the effects of the two publications. While the caption in the Jaubert case may have offended the Jauberts because of its rather uncomplimentary description of their home, this can hardly be said to have the same effect as the publication of an individual's past criminal record. The former may be annoying whereas the latter is extremely damaging to one's reputation and standing in the community. This difference is highlighted in the case of Carlysle Hebert by his decision to relocate his family away from the locale of the publication.
In Norris v. King, 355 So.2d 21 (La.App. 3d Cir. 1978), U.S. cert denied 439 U.S. 995, 99 S.Ct. 596, 58 L.Ed.2d 669, U.S. rehearing denied 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83, the court allowed the plaintiff to recover for the publication of his criminal conviction. Plaintiff robbed defendant's washateria, was apprehended, tried and convicted. In the course of the robbery plaintiff's photograph was taken by a hidden camera and defendant later posted the picture on the bulletin board in the washateria. The picture was accompanied by humorous captions stating plaintiff had been "caught in the act" and "Michael now has a police record" and so on. Plaintiff was identified by name and address. He sued for invasion of privacy and the court noted although the facts published were true, plaintiff's privacy had indeed been invaded. The court cited Briscoe v. Reader's Digest Association, 93 Cal.Rptr. 866, 483 P.2d 34 (Cal.1971), rehearing denied 1971, and quoted from that opinion as follows:
"`One of the premises of the rehabilitative process is that the rehabilitated offender can rejoin that great bulk of the community from which he has been ostracized for his anti-social acts. In return for becoming a "new man" he is allowed to melt into the shadows of obscurity.'"
*931 In Briscoe plaintiff had hijacked a truck in 1956 but immediately thereafter reformed and "assumed a place in respectable society." In 1967 defendant published an article entitled "The Big Business of Hijacking" which mentioned plaintiff and described his hijacking job. Plaintiff's eleven year old daughter and several friends learned of the incident through the article. They thereafter scorned and abandoned him. Plaintiff claimed the public disclosure of private facts humiliated him and subjected him to ridicule and contempt. His main argument was although the subject of the article may have been newsworthy, the use of his name was not. The California Supreme Court agreed.
The court discussed the difference in reporting current criminal activities as opposed to criminal activities that occurred years before. It noted society has a general interest as to who has recently committed a crime and how the crime was committed for this information may encourage unknown witnesses to come forth and friends of the victim to give aid. The court stated there may be an educational value in reporting the facts of past crimes, but noted there is no legitimate purpose in reporting the names of the actors.
"However, identification of the actor in reports of long past crimes usually serves little independent public purpose. Once legal proceedings have terminated, and a suspect or offender has been released, identification of the individual will not usually aid the administration of justice."
The court spoke of the tension between the idea of a free press and the protection of an individual's privacy.
"In a nation built upon the free dissemination of ideas, it is always difficult to declare that something may not be published. But the great general interest in an unfettered press may at times be outweighed by other great societal interests. As a people we have come to recognize that one of these societal interests is that of protecting an individual's right to privacy. The right to know and the right to have others not know are, simplistically considered, irreconcilable. But the rights guaranteed by the First Amendment do not require total abrogation of the right to privacy. The goals sought by each may be achieved with a minimum of intrusion upon the other."
The Briscoe court discussed the matter in great detail and then set forth a four part test to be used by the lower court upon remand.[3] In determining whether the plaintiff should prevail the court said:
"We do not hold today that plaintiff must prevail in his action. It is for the trier of fact to determine (1) whether plaintiff had become a rehabilitated member of society, (2) whether identifying him as a former criminal would be highly offensive and injurious to the reasonable man, (3) whether defendant published this information with a reckless disregard for its offensiveness, and (4) whether any independent justification for printing plaintiff's identity existed."
Using these four factors as a test, we conclude plaintiffs' privacy was indeed invaded. First, the record established all three plaintiffs had been law-abiding citizens since their indiscretion in 1952. Each raised families, collectively having twenty-six direct descendants (fourteen children and twelve grandchildren). There is no doubt they had become rehabilitated members of society. Second, it is obvious the identification of the Roshto brothers as criminals would be offensive and injurious to the reasonable man. The incident was twenty-one years old at the time of the first publication and twenty-five years old at the time of the second one. As Carlysle Roshto testified, the subsequent generation didn't know anything about the incident. The brothers status changed from anonymous law-abiding citizens to former criminals because of this publication. This would certainly be injurious to any reasonable person *932 and it was injurious to the Roshto brothers as demonstrated by their testimony which clearly depicts the agony suffered by them.
The third factor is a matter requiring some discussion. Mr. E. R. Roshto stated emphatically he communicated his request concerning the prohibition of further identification to some person at the newspaper. No one disputed this claim although Mr. Hebert denied he personally was ever informed of such a request. Under these circumstances, the newspaper must be held to have received the request. Yet, another article on the same subject was printed five years later. We conclude the second publication, if not the first, was with reckless disregard for the offensiveness of the article. Even without the Roshtos' request common sense dictates it would offend a local citizen to have his neighbors reminded of his criminal act committed a quarter of a century in the past.[4]
Finally, we find no independent justification for printing plaintiffs' identities. Mr. Hebert testified the reason he printed the "Page From Our Past" was because of the community's historical interest. While this is a valid reason for reprinting the front page as a whole, there can be little historical interest in the identification of these plaintiffs. They have not remained in the criminal world so that their beginnings were of interest to people today. They had long been private citizens and we find no independent justification for the reprinting of the article concerning their past crimes. Whatever remote historical interest may exist concerning these particular convictions is far outweighed by plaintiffs' interest in maintaining their privacy and status as respected citizens of the community. See Lambert v. Dow Chemical Company, 215 So.2d 673 (La.App. 1st Cir. 1968). Therefore, using the factors set forth in Briscoe, we conclude plaintiffs should be allowed to recover.
The Restatement Second of Torts discusses suits for invasion of privacy in § 652D.
"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
(a) would be highly offensive to a reasonable person, and
(b) is not of legitimate concern to the public."
We have discussed adequately the offensive nature of this publication as well as the fact that the identity of the Roshto brothers as criminals was of no legitimate concern to the public some twenty-five years after the crime was committed. Moreover, the lapse of time between the actual crime and the reprinting of the articles is of utmost importance to our decision in this case. This aspect of invasion of privacy suits is discussed in comment "k" of the Restatement as follows:
"k. Lapse of time. The fact that there has been a lapse of time, even of considerable length, since the event that has made the plaintiff a public figure, does not of itself defeat the authority to give him publicity or to renew publicity when it has formerly been given. Past events and activities may still be of legitimate interest to the public, and a narrative reviving recollection of what has happened even many years ago may be both interesting and valuable for purposes of information and education. Such a lapse of time is, however, a factor to be considered, with other facts, in determining whether the publicity goes to unreasonable lengths in revealing facts about one who has resumed the private, lawful and unexciting life led by the great bulk of the community. This may be true, for example, when there is a disclosure of the present name and identity of a reformed criminal and his new life is utterly ruined by a revelation of a past that he has put behind him. Again the question is to be determined upon the basis of community standards and mores. *933 Although lapse of time may not impair the authority to give publicity to a public record, the pointing out of the present location and identity of the individual raises a quite different problem." (Emphasis added.)
We have no difficulty in concluding the lapse of time in the present case makes the publicity unreasonable in revealing sensational facts about the three brothers who had resumed a very mundane life in the community.
We are aware of the United States Supreme Court decision of Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), in which the father of a rape victim sued a television station for broadcasting the name of his daughter. In Cox, the Supreme Court reversed the state court's award to the plaintiff for invasion of privacy because the name of the victim was a matter of public record.[5]
The plaintiff in the Cox case was not the person whose name was published but the father of the victim, suing for his own invasion of privacy. In the present case the plaintiffs are the persons whose names were published and therefore their right of privacy was obviously more directly affected.
The major distinction however is the fact the publication in Cox was of a current nature, i.e., the rape victim's name was published in connection with the trial of the suspect. The item was fresh and newsworthy. The entire community was no doubt interested in learning the unfortunate victim's name. The publication in the present case, twenty-five years old, had absolutely no value as a newsworthy item. We think the difference is important and we do not consider ourselves to be governed by the Cox holding.
In conclusion, we reject defendants' argument that because the criminal convictions are of public record the media is absolutely free to bring up the matter at any time and for any reason. To so hold would mean that regardless of the passage of time and a complete rehabilitation, persons once convicted or accused of crimes must be subject to constant anxiety that the matter may resurface at the whim of a newspaper publisher or a television newscast director. While ever respectful of the broad reach of the First Amendment[6] we conclude each case must be determined according to its own facts and the interests of the press must be balanced against the individual's interests of privacy. Our holding is limited to the narrow facts of this case, i.e., we hold that when humiliating and injurious facts are published about an ordinary citizen who has not been in the public eye for many years and these facts have no value as newsworthy items, the person has a right to recover for the invasion of his privacy. We so hold in recognition of the vast power of the media and the devastating results that can occur when it is given an unfettered license to splatter details of an individual's private life throughout its pages or across its airwaves.
An award of $35,000 for each plaintiff is an adequate redress for the injuries sustained.
Accordingly, the judgments of the trial court are reversed and we render judgment in each of the consolidated cases as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in Docket Number 14,639 (Number 22,630 on the docket of the 18th Judicial District Court), in favor of the plaintiff, E. R. Roshto, and against defendants, Gary J. Hebert, Joyce S. Hebert and The South Publishing *934 Company, Inc., in solido, for the sum of $35,000, together with legal interest thereon from date of judicial demand until paid, and for all costs of court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in Docket Number 14,640 (Number 22,631 on the docket of the 18th Judicial District Court), in favor of the plaintiff, Alfred Roshto, and against defendants, Gary J. Hebert, Joyce S. Hebert and The South Publishing Company, Inc., in solido, for the sum of $35,000, together with legal interest thereon from date of judicial demand until paid, and for all costs of court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in Docket Number 14,641 (Number 22,632 on the docket of the 18th Judicial District Court), in favor of the plaintiff, Carlysle Roshto, and against defendants, Gary J. Hebert, Joyce S. Hebert and The South Publishing Company, Inc., in solido, for the sum of $35,000, together with legal interest thereon from date of judicial demand until paid, and for all costs of court.
All costs incurred on appeal in each of these consolidated cases are taxed against defendants, Gary J. Hebert, Joyce S. Hebert and The South Publishing Company, Inc., in solido.
REVERSED AND RENDERED.
NOTES
[1] Mr. Hebert testified he has printed a "Page From Our Past" almost once a week since 1973.
[2] Established as defendant entities by the pleadings were: Gary James Hebert and Joyce S. Hebert, publishers and editors of The Iberville South; and, The South Publishing Company, Inc., owner of The Iberville South. The Heberts are also stockholders in the corporate entity.
[3] The issue on appeal was whether plaintiff had stated a cause of action for invasion of privacy. The merits of the case were not considered by this court but were to be determined by the lower court upon remand.
[4] We note malicious intent on the part of the defendant is not a necessary element in a case involving invasion of privacy. See Tooley v. Canal Motors, Inc., 296 So.2d 453 (La.App. 4th Cir. 1974).
[5] Plaintiffs had sued in reliance on a state statute which made it a misdemeanor for a person to publish the name of a rape victim. The state trial court said the statute gave plaintiff a civil cause of action. The state supreme court rejected this but concluded the complaint stated a cause of action for common-law invasion of privacy. On rehearing the state supreme court said the statute created a state policy that a rape victim's name was not a matter of public concern. The United States Supreme Court said the statute violated the First and Fourteenth Amendments.
[6] Cf. Art. 1, § 5 of The Louisiana Constitution of 1974, entitled "Right to Privacy," which provides in pertinent part: "Every person shall be secure in his person ... against unreasonable... invasions of privacy." See also, Jaubert, supra, at p. 1387, footnote 2.