GARRETT, J.
bln this appeal involving an auto accident, State Farm Mutual Automobile Insurance Company (“State Farm”) contends that the trial court erred in holding its insured, Sandra Riche, liable when she was not the driver of and allegedly not the owner of the van that caused the collision. It also questions • the apportionment of fault and quantum. The plaintiffs answered the appeal, requesting that the judgment be modified to hold that Ms. Riche’s son was the driver of the van and that he was 100 percent liable. We affirm.
FACTS
On February .16, 2011, an auto accident occurred on Benton Road in Bossier City at about 2 p.m. This road has two southbound lanes, two northbound lanes, and a center turn lane. Christopher (“Chris”) Harper was driving a 1996 Mitsubishi 3000GT south on Benton Road in the inside lane. He was accompanied by Amaris Pena, the owner of the Mitsubishi. They were going to pick up Amaris’s son from school. According to Chris and Amaris, a blue minivan was also traveling south in the outside lane ahead of them when it suddenly and unexpectedly began to cross into their lane. The van then swerved back into its lane without making contact with the Mitsubishi. While attempting to avoid being hit by the minivan, Chris swerved into the turn lane and collided with an oncoming Suburban driven by Farris Dorsey. Mr. Dorséy.was sitting in the turn lane waiting to turn into a driveway. The air bags in the Mitsubishi deployed due to the severity of the collision. The blue minivan left the scene immediately-
| aWillie Washington, a friend of Mr. Dorsey, was in his vehicle in a nearby driveway and heard the collision. He described hearing a “boom,” “screech,” and “bam.” He immediately got out of his vehicle to check on the occupants of the wrecked vehicles. At Amaris’s urging, he returned' to his car, pursued the blue van (which she pointed out to him), and obtained its license plate number, which he then gave to the police.
Through- the license plate number, the blue 1994 Ford Aerostar minivan was determined to be registered to -Ms. Riche, who had an insurance policy on it with State Farm. Ms. Riche claimed that she sold the minivan to her son David in 2004 for cash. However, no bill of sale was ever confected, and the title to the vehicle *171 was never placed in David’s name. Also, despite the alleged sale, Ms. -Riche was still paying all of the premiums on the State Farm policy at the time of the accident.
Shortly after the accident, in April 2011, Chris and Amaris filed suit against State Farm and David, asserting that he was the driver of the van whose sudden lane change caused the accident. Their petition asserted that Ms. Riche was the registered owner of the van and that she had a policy with State Farm covering it. In April 2013, the plaintiffs amended their petition to add Maria Bellucci, David’s girlfriend, as a defendant.' They also alleged that the driver was David, Maria, or David’s minor son, David, Jr. In its answer to this amended petition, State Farm first denied coverage due to the alleged sale. ■
A bench trial was eventually held on May 20, 2015. The plaintiffs testified as to the circumstances of the accident and their resulting injuries. |3Neither saw the driver of the van. They both identified photos of the Riche minivan, which were introduced into evidence, as being the vehicle that unexpectedly swerved' into their lane. Both were wearing seatbelts and sustained injuries in the collision, which caused the air bags to deploy. Chris testified that he injured his back and his left hand in the collision and that he struck his knee on the dashboard. He also stated that his pain prevented him from returning to his job as a stocker at Wal-Mart for more than two months. Amaris, an LPN, testified that she sustained an abrasion to her left arm from the air bag, as well as bruising to her right hand.' She was transported to a hospital in an emergency vehicle. She also had some neck pain, which she believed caused her to suffer migraines. Both saw Dr. Richard Kamm for about three months and ceased treatment for financial reasons. Their medical records documenting their injuries and treatment and their medical bills were admitted into evidence.
Testimony was also given- in court by David Riche and his fiancée, Maria Belluc-ci. Each emphatically denied being; the driver of the blue van at the time of-the accident. David, a correctional officer at Forcht-Wade Correctional Center who worked the 6 p.m. to 6 a.m". shift, insisted that he would have been asleep at that time. However, ■ when pressed by plaintiffs’ counsel, he conceded that, at the time of the accident, he would not have been at work. He maintained that, at the time of the accident, the van was considered Maria’s vehicle. His recollection of the circumstances pertaining to the van’s alleged acquisition from his mother — and many other facts — was extremely poor. He initially said he paid her $1,900 or $2,000 | ¿before admitting he could not recall how much he paid. He said nothing was in writing and he paid cash in increments. He further said he bought it a year or two before the February 2011 accident. He was unable to satisfactorily explain several matters; these included his failure to contact State Farm to relay his contention that he and Maria were not involved in the accident, his failure to show up for a deposition, or his reluctance to contact the investigating , officer, who he claimed authored a “vague” police report.
In her testimony, Maria insisted that the van was not even working at the time of the accident and-that her father was taking her back and forth to her job at IHOP. According to her, at the time of the accident, the van was in the driveway of the house she shared with David and their children, none of whom were old enough to drive..
Sgt. Jason Halverson of the Bossier City Police Department testified that he responded, to,-the accident when he was a patrolman. He' testified that, under the *172 circumstances of the accident, he felt neither Chris nor Mr. Dorsey committed any traffic violations, and no citation was issued to either driver.
Admitted into evidence were the depositions of Ms. Riche and Mr. Washington, which were taken in 2012. Ms. Riche testified that her son bought the van from her in 2004 for $100 and that he did not pay her any other money after that. When confronted with her son’s claim to have paid $1,500, she said he might have paid more. She remembered signing a title that David or Maria later said they lost. According to her, she decided to | ^maintain insurance on the van while the title was still in her name, and she told her insurance agent that she would leave the van on her policy because she was “in the process of selling” it. After the accident, she was contacted by a State Farm representative. She told the woman that Maria was most likely driving the van, not David. The representative asked her to have David call State Farm; Ms. Riche asked him to do so five or seven times. She also recounted loaning one of her other vehicles to David two weeks before the accident, a silver van which he totaled in a situation for which he was at fault.
In his deposition, Mr. Washington recounted how he pursued the older model, blue Ford van after the collision. He wrote down the license plate number and gave it to a police officer when he returned to the accident scene. The driver of the fleeing van appeared to be a white or Latino male but, due to the van’s tinted windows, he could not tell the person’s hair color. His primary concern was to get the license plate number.
Among the exhibits introduced at trial by the plaintiffs was State Farm’s August 2014 answer to request for admissions. In this document, State Farm admitted that it did not cancel Ms. Riche’s insurance on the van prior to the accident and that it never received any paperwork that Ms. Riche sold the van to David before or after the accident. State Farm also answered that it was unknown at that time whether premiums were returned to Ms. Riche since the accident, as such was not the function of the claims department. However, at trial, State Farm introduced a copy of a check issued to Ms. Riche by State Farm on May 17, 2011 (after this suit was | flfiled), in the amount of $2,188.70 as a refund of her premiums; the check was endorsed and negotiated by Ms. Riche.
The trial court took the matter under advisement and rendered written reasons for judgment on July 17, 2015. In its well-reasoned opinion, the court found that David and Maria were not credible witnesses and that their explanations of what occurred were “questionable at best.” Finding that the van was at the scene of the accident and its movement more likely than not caused the accident, it assessed 100 percent of the fault to that vehicle. While the court concluded that Ms. Riche may have intended to sell the van to her son, it expressly found that the sale was never completed and that was the reason she continued to pay the State Farm premiums on the van. Thus, the court found that she was the true owner of the van at the time of the collision. The court believed the testimony of David and Maria that they were in possession of the van and concluded that this possession was with the knowledge and permission of Ms. Riche. The court found that, more likely than not, David or Maria was the driver at the time of the accident. Determining that the sale was never completed and that Ms. Riche continued to pay premiums, the court found that State Farm provided a valid insurance policy on the van at the time of the accident. Accordingly, it *173 deemed State Farm liable to the plaintiffs for 100 percent of the damages caused.
As to damages, the court awarded recovery in the following amounts: to Amaris— property damages to her Mitsubishi in the amount of $2,985.00, medical damages of $2,574.99, and general damages of $6,000.00; and to |7Chris — medical damages in the amount of $2,730.70, and general damages of $10,000.00. Judgment in conformity with this opinion was signed on September 16, 2015.
State Farm appeals. The plaintiffs answered the appeal, requesting that the judgment be amended to hold that David was the driver and 100 percent liable.
LIABILITY

Law

In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-elearly wrong standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 2014-2592 (La.12/8/15), 193 So.3d 1110. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. Hayes Fund for First United Methodist Church of Welsh, LLC, supra. In reversing a factfinder’s determinations, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993).
This test requires a reviewing court to do more than simply review the record for some evidence which supports or controverts the trial court’s findings. The court inust review the entire record to determine whether ■ the | ¿trial court’s finding was clearly wrong or manifestly erroneous. Hayes Fund for First United Methodist Church of Welsh, LLC, supra. The issue to be resolved by a reviewing court .is not whether the trier of fact was right or wrong, but whether- the factfin-der’s conclusion was a reasonable one. Stobart, supra.
Where there are two permissible views of the evidence, the factfinder’s . choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Rosell, supra; Dixon v. Tucker, 47,113 (La.App.2d Cir.5/16/12), 92 So.3d 1100, writ not cons., 2012-1838 (La.11/9/12), 100 So.3d 824. Where the factfinder’s determination is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous. Purvis v. Grant Par. Sch. Bd., 2013-1424 (La.2/14/14), 144 So.3d 922; Snider v. Louisiana Med. Mut. Ins. Co., 2014-1964 (La.5/5/15), 169 So.3d 319.
In Louisiana’s three-tiered court system, fact finding is allocated to the trial court, and its evaluations of credibility, even when based on depositions offered in lieu of live testimony, are accorded great deference. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987); Byrnside v. Hutto, 47,685 (La.App.2d Cir.2/27/13), 110 So.3d 603. Reasonable evaluations of credibility and reasonable inferences of fact | nshould not be disturbed on appeal. Holley Homestead, Trust v. Harrison, 44,149 (La.App.2d Cir.4/15/09), 11 So.3d 511.
*174 Under the sudden emergency doctrine, a person who finds himself in a position of imminent peril, without sufficient time to consider , and weigh all the circumstances or- the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method,- unless the emergency is brought about by his own negligence. King v. State Farm Ins. Co., 47,368 (La.App.2d.Cir.8/8/12), 104 So.3d 33; Holland v. State Farm Mut. Auto. Ins. Co., 42,753 (La.App.2d Cir.12/5/07), 973 So.2d 134. The defense of sudden emergency is simply treated as one of the factual considerations used in assessing the degree of fault to be attributed to a party. King, supra. The existence of negligence and the allocation of fault are factual determinations and subject to the trial court’s great discretion. Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.5/9/07), 957 So.2d 323; King, supra.

Discussion

 State Farm contends that the trial court erred in finding that Ms, Riche was still the owner of the van at the time of the accident. It claims that it proved the necessary elements of an automobile sale — a meeting of the minds as to the object to be sold and the price without the necessity of a transfer of the certificate of title. Biggs v. Prewitt, 95-0315 (La.App. 1st Cir.10/6/95), 669 So.2d 441, writ denied, 96-1035 (La.5/31/96), 674 So.2d 264.
| ipThe trial court concluded that, while Ms. Riche might have intended to sell the van to her son, she had not done so when the instant accident occurred. Based on the record, which includes conflicting testimony from Ms. Riche and her - son about the alleged sale, we cannot find the trial court was manifestly erroneous in finding no sale of the van had been confected at that time.. Mother and son gave vastly differing, testimony, She said he purchased the van from her for $100 -in 2004. He testified he could not recall how much he paid her for. the van, maybe $1,900 or $2,000.[1] While she said -he paid her all at once, he testified that he paid in increments, Additionally, he could not recall when he allegedly.purchased it, except to say that it was “maybe a year, maybe two” before the instant accident, which occurred in February 2011. Ms. Riche said she loaned David another vehicle two weeks before the accident, which he subsequently totaled. He said he did not recall her giving him another vehicle to use before the instant accident. The trial court specifically found that David was nót a credible witness, a determination which was fully within its proVince and which is well supported by the record. While Ms. Riche’s testimony was confusing and equivocal about the alleged sale, it did demonstrate that she had a history of loaning vehicles to her son and that he and Maria had her permission to use the blue van.
InState Farm complains about the trial court’s wording in assessing all fault for the accident to the blue van — an inanimáte object — and in- finding that either David'or Maria was more likely than not the driver of the blue van on the day of the accident without making a definitive determination as to the identity of "the driver. It-main *175 tains that these findings were manifest error on the trial court’s part.
However, in “hit and run” and “miss and run” accidents, it is not always possible to identify the driver, but the registered owner of the vehicle- may sometimes be tracked down through its license plate. In State Farm Mut. Auto. Ins. Co. v. Smith, 99-121 (La.App. 5th Cir.6/1/99), 738 So.2d 131, the court faced such a situation. There, the registered owner of a car which was identified as being involved in a hit and run accident through its license plate number asserted that the car had been stolen. The court stated:
We initially point out that Imperial’s policy insured Smith as well as any other person operating his car with his permission. Thus, it was not plaintiffs burden to prove that Smith was driving the car, but rather that either he or someone authorized by him was doing so. To establish this fact plaintiff introduced eye witness testimony that the car involved in the rear-end collision was an old, maroon Oldsmobile, bearing' a license- plate number which identified Smith as the owner of such a vehicle. These facts are clearly sufficient to establish as more probable than not the reasonable inference that Smith or someone authorized by him was driving the car at the time of the accident..., On this prima facie showing, it was then incumbent upon Imperial to go forward with evidence to refute the above inference. It attempted to do so by introducing Smith’s assertion that his vehicle had been stolen on the night in question and therefore that neither he nor anyone authorized by him was driving the car when the accident occurred. Unfortunately for Imperial, -the trier of fact did not find Smith’s version- of events credible. There being no other evidence to refute plaintiffs -showing that more probably than not Smith or |12someone with' his permission was the driver, judgment was properly entered in plaintiffs favor on the liability policy.
See also Louisiana Farm Bureau Cas. Ins. Co. v. Hayden, 2010-0015 (La.App. 4th Cir.6/9/10), 41 So.3d 621, and Lopez v. Safeway Ins. Co., 2011-1577 (La.App. 3d Cir.5/2/12), 2012 WL 1549977.
A similar situation is presented in the instant case. Ms. Riche’s policy provided coverage to a person using her car with her express or implied permission. The blue van owned by Ms. Riche was placed at the accident scene through its license plate. Ms. Riche’s testimony established that David and Maria had use of the vehicle with her permission. The trial court obviously rejected Maria’s testimony that the van was inoperable at the time of the accident, as well as her and David’s testimony, denying that either of them was the driver who fled the scene. Under the circumstances presented in this case, we find no manifest error in the trial court’s ruling that, more probably than not, David or Maria was driving at the time of the accident.[2]
State Farm also- attacks the credibility of Mr. Washington, the witness who obtained the fleeing blue van’s license plate number, which led to the identification of Ms. Riche as its registered owner. It contends that he was not an independent, unbiased witness because he was a “close friend” of Mr. Dorsey,- one of the drivers involved in the collision. At oral argument, counsel for State Farm even asserted that Mr. Washington was waiting for *176 Mr. Dorsey at a house near the site of the collision to go to a - get-together. | |3However, the evidence in the record does not support these contentions. Mr. Washington testified that, at the time of the accident,-he was in his car in a residential driveway; he was picking up a friend named J.R. at the home of J.R.’s mother. He further testified that Mr. Dorsey was a friend from high school, where they played footbáll together. He did not testify that he had any plans with Mr. Dorsey on the day of the accident. State Farm has failed to specify how the mere fact of friendship with Mr. Dorsey would impugn Mr. Washington’s testimony- about obtaining the license plate number of the fleeing blue van, especially since both plaintiffs positively identified photos of Ms. Riche’s van as being the one that caused the accident in which they were injured.[3]
State Farm also complains that the trial court failed to assess any percentage of comparative fault to Chris. Our review of the record reveals that Chris was confronted by a sudden emergency. Chris testified without contradiction that the blue van veered into his lane of travel so quickly that all he could do was swerve into the turn lane to try to avoid it. He testified that, under the circumstances, there was nothing else he could' do. Amarisls testimony, corroborated this assertion. While he was unsuccessful in his efforts to completely avoid Mr. Dorsey’s Suburban, his evasive-maneuvering resulted in the Mitsubishi barely skimm[ing]” the driver’s side of the Suburban, thus minimizing the severity of the collision. Sgt. Halverson, who investigated the accident, concluded that Chris’s actions did | Mnot warrant a traffic citation. Based on this evidence, we do not find that the trial court committed manifest error in refusing to assess any degree of comparative negligence against Chris.
GENERAL DAMAGES
State Farm next contends that the trial court abused its vast discretion in awarding general damages to the plaintiffs.[4] • Amaris was awarded $6,000.00, while Chris received $10,000.00.
General damages involve mental or physical pain and suffering, inconvenience and loss of intellectual or physical enjoyment. George v. Allstate Ins. Co., 32,899 (La.App.2d Cir.4/5/00), 758 So.2d 373. The trial court has much discretion in the assessment of damages, so that an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 2001-2582 (La.12/14/01), 804 So.2d 647. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when an award is beyond that which a reasonable trier of fact could assess for the effects of the *177 particular injury to the individual plaintiff under the particular hRcircumstances that the appellate court should increase or reduce the award. Gilliard v. Collins, 42,-460 (La.App.2d Cir.11/7/07), 969 So.2d 786. An abusively high award is reduced to the highest amount that the trier of fact could have reasonably awarded. Moody, supra. Whether an award is excessive depends upon a determination of whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the factfinder. Gilliard, supra.
In Gilliard, supra, we affirmed an award of approximately $6,000.00 for injuries sustained by the plaintiff to his left shoulder, neck, and upper back in an auto accident. The plaintiff was released from treatment by his doctor after only one month of treatment, but he was continuing to have intermittent shoulder pain at the time of trial. See also Smith v. Midland Risk Ins. Co., 29,793 (La.App.2d Cir.9/24/97), 699 So.2d 1192. In that case, we affirmed a general damages award of $8,000.00 to an auto accident plaintiff who had difficulty performing her job for three to four months after the accident and still experienced occasional neck pain at the time of trial.
Amaris was transported to the hospital by ambulance after the accident. She sustained an abrasion to her left arm from the deployed air bag, as well as bruising on her right hand and left shoulder pain. She quit treatment after three months because she lacked insurance or funds to continue. She continued to suffer neck pain, which led to migraines. We find no abuse in the trial court’s award of $6,000.00 in general damages.
|1fiChris injured his left hand and back in the accident. Due to his injuries, he was off work from his job as a Wal-Mart Stock-er for 2½ months. He was treated by Dr. Kamm for about four months. He was released by his doctor when he told the doctor that he had bills to pay. His medical records showed that he was seen in an emergency room in January 2012 for chronic low back pain related to the February 2011 accident. At trial, he testified that he continued to have intermittent back pain. We find no abuse in the trial court’s award of $10,000.00.
CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed to State Farm Mutual Automobile Insurance Company.
AFFIRMED.

. _In Ms. Riche’s deposition, the following exchange indicated that David gave a different amount before trial:
Q. [David] says he paid,you $1,500 for the van.
A. He may have helped part of it [sic], I did not consider that he paid for it. He was helping out because I had to have hip .surgery..;.

. Although Mr. Washington’s testimony tends to strongly indicate that David was the driver, we further find it unnecessary to amend the judgment to specify that he was the driver, as requested by the plaintiffs in their answer to the appeal.

. The photos of the van introduced into evidence showed that its appearance was rather unique. It was old, and the blue shiny color was distinctive. The likelihood of another such van being in the vicinity at the time of the accident was minimal.

. State Farm failed to make any specific complaints about the awards and cited no cases supporting its. claim that the awards were abusively high. In. fact, its briefing of this assignment of error consisted, in its entirety, of the following heading and a single one-sentence paragraph:
(E.) THE TRIAL COURT COMMITTED MANIFEST ERROR IN-ITS AWARD OF DAMAGES.
While it is understood the trial court has great discretion in awarding damages, your Appellants contend the general damage awards -are not in line with jurisprudence and would argue that the general damage awards should be reduced accordingly.