Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,804-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DESKENNA CAMERON                          Plaintiff-Appellant

versus

ST. FRANCIS MEDICAL                       Defendant-Appellee
CENTER, INC.

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-CV-04454

Honorable Jefferson B. Joyce, Judge

* * * * *

ANTHONY J. BRUSCATO                        Counsel for Appellant

BREAZEALE, SACHSE & WILSON, LLP           Counsel for Appellee
By: Thomas R. Temple, Jr.

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

**STEPHENS, J.**

This appeal arises from the Monroe City Court, Parish of Ouachita, the Honorable Jefferson B. Joyce, Judge, presiding. The plaintiff, Deskenna Cameron ("Ms. Cameron"), filed suit against the defendant, St. Francis Medical Center, Inc. ("St. Francis"), seeking damages, alleging an invasion of her privacy from the disclosure of her personal medical information. Following a bench trial, the court found in favor of St. Francis and dismissed Ms. Cameron's claims with prejudice. For the reasons set forth below, we affirm.

### FACTS AND PROCEDURAL HISTORY

On June 12, 2017, Ms. Cameron visited the emergency room at St. Francis in Monroe, Louisiana, after experiencing abdominal pain. When she arrived, Ms. Cameron completed the initial paperwork and took a seat in the main waiting room. She was accompanied by her two minor children and a cousin. The triage nurse, Bianca Hayes ("Nurse Hayes"), brought Ms. Cameron from the main waiting room to the triage room, where Nurse Hayes assessed Ms. Cameron and obtained her vital signs. Following discussions with the physician's assistant about Ms. Cameron's symptoms, Nurse Hayes asked Ms. Cameron to provide a urine sample, and then Nurse Hayes then escorted Ms. Cameron to the triage waiting area, where she remained until the test results came back.

According to Ms. Cameron, she waited for her test results in the presence of her children and cousin. She also stated that between four to ten other people were in the triage waiting area at the time. In her deposition testimony, Ms. Cameron discussed that she had no idea who the other

individuals were in the waiting area or what they looked like.[1]

Approximately 30 minutes passed before Nurse Hayes returned to the triage waiting area to give Ms. Cameron her diagnosis of a urinary tract infection.

Ms. Cameron testified that when Nurse Hayes returned to the waiting area, she "spurted out" Ms. Cameron's test results in front of everyone. However, Nurse Hayes testified at trial that no other individuals were present in the triage waiting area at the time she provided Ms. Cameron's diagnosis and discharge instructions. Nurse Hayes stated that, even if other people would have been in the room, these individuals could not have heard Ms. Cameron's diagnosis as Nurse Hayes did not verbalize the diagnosis, the medication, or the discharge instructions. Instead, Nurse Hayes said she pointed to the information on the chart. She further emphasized that she remembers the exchange with Ms. Cameron because it resulted in the first and only complaint filed against her.

After giving Ms. Cameron the information about her diagnosis and discharge instructions, Nurse Hayes administered an antibiotic to Ms. Cameron and then discharged her from the hospital. Nurse Hayes testified that during the diagnosis and instructions for discharge, Ms. Cameron never got loud or aggressive, nor did she act upset with Nurse Hayes about anything that transpired in the emergency room. Instead, Ms. Cameron indicated she had no questions and voluntarily signed the discharge paperwork. Ms. Cameron, on the other hand, testified in her deposition that she questioned why Nurse Hayes "spurted out" the diagnosis in front of people. After receiving her paperwork, Ms. Cameron indicated that she

---

[1] Ms. Cameron was unavailable to testify at the time of trial. As a result, the court admitted her deposition testimony.

immediately reported Nurse Hayes' behavior to the front desk at the main entrance of the emergency room. Ms. Cameron stated that she was given a number to call and gave the receptionist her name and number. She communicated in her deposition that she was embarrassed by what took place and immediately left the hospital after filing her complaint at the reception desk.

On December 5, 2019, Ms. Cameron filed a petition for damages against St. Francis Medical Center, claiming that she suffered humiliation, mental anguish, and embarrassment when the healthcare provider breached its standard of care and confidentiality. A bench trial was held on February 14, 2023.

At the trial, Gerald McCloskey testified that he is the risk manager at St. Francis. Counsel for Ms. Cameron questioned Mr. McCloskey about the counseling/disciplinary report form which, from Mr. McCloskey's understanding, was used in this instance as a verbal warning. The counseling report form included a written statement from Nurse Hayes, in response to the allegations made by Ms. Cameron. However, the section used by St. Francis and Nurse Hayes' supervisor to indicate the warning given was redacted. During this line of questioning, Mr. McCloskey informed the trial court that HIPAA[2] complaints do not fall under the realm of risk management. He then stated that the proper person to talk to regarding specific HIPAA complaints would be the hospital's compliance

---

[2] HIPAA, which stands for Health Insurance Portability and Accountability Act, was federal legislation passed in 1996 that sets a national standard which protects a person's medical records and other personal health information.

officer.  Mr. McCloskey's testimony led to an exchange between counsel about the redacted portion of the disciplinary report.

During his questioning of Mr. McCloskey, counsel for Ms. Cameron indicated that he received the redacted version of the disciplinary report and requested that the trial court require St. Francis to produce a clean copy.  In response, defense counsel explained that this issue had not been raised previously, and that no Rule 10.1 conference had been requested or had occurred.  The attorney representing St. Francis also informed the court that any potential quality assurance, peer review, or root cause analysis investigation of a hospital is not discoverable under any state or federal law.  Defense counsel further argued that during trial was not the time to raise this issue, especially when the witness testified that he was not involved in the preparation of the document.  The redacted disciplinary report was produced because it included a handwritten statement from Nurse Hayes, but the hospital's attorney argued that the redactions were appropriate.  Furthermore, the redaction issue was not raised despite the report being produced "months and months and months ago."  Specifically, St. Francis produced the document to Ms. Cameron in April 2021.

Following a lengthy exchange between the parties' attorneys about the contents of the document and whether a clean copy of the report should be provided, the trial court ultimately determined that the issue of the redacted disciplinary report was a discovery issue that should have been handled prior to the trial date.  The court indicated that, prior to trial, it would have been inclined to require St. Francis to provide a clean copy of the report; however, no Rule 10.1 conference occurred and no motion to compel was filed.  Therefore, the trial court reasoned that with what little was in the redacted

4

report, counsel for Ms. Cameron could have subpoenaed Nurse Hayes' direct supervisor or someone with knowledge of the disciplinary report. The court then stated that it would not direct St. Francis to give Ms. Cameron a clean copy of the disciplinary form. Following the bench trial, on May 8, 2023, the trial court entered judgment in favor of St. Francis and found that Ms. Cameron failed to sustain her burden of proof. The court dismissed the case with prejudice, and Ms. Cameron now appeals.

## DISCUSSION

In her first assignment of error, Ms. Cameron urges that the trial court erred in concluding that she had to file a motion to compel discovery responses as a precondition to file a trial subpoena, seeking production of a clean copy of the disciplinary report. Next, Ms. Cameron contends that the trial court erred when it determined that she had to subpoena the individual who prepared the disciplinary report as a precondition for seeking to subpoena the clean copy of the report. In her third and fourth assignments of error, Ms. Cameron maintains that the trial court erred in failing to draw a negative inference from St. Francis' refusal to supply a clean copy of the report, and when this inference is properly applied, the judgment of the trial court is manifestly erroneous as the overwhelming weight of the evidence favors Ms. Cameron.

In response, St. Francis argues that Ms. Cameron first requested a clean copy of the report at trial without filing a motion to compel and without holding a Rule 10.1 conference. Given these reasons, St. Francis maintains that the trial court correctly declined to give Ms. Cameron a clean copy of the report as the issue was not appropriately before the trial court. St. Francis further asserts that the trial court appropriately denied Ms.

5

Cameron's request to apply an adverse presumption because no evidence was spoiled. St. Francis urges that the trial court's judgment in its favor should be affirmed.

In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110; *Moham v. Texas Transeastern, Inc.*, 55,309 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1074; *Harper v. State Farm Mut. Auto. Ins. Co.*, 50,728 (La. App. 2 Cir. 6/22/16), 198 So. 3d 168.

The right of privacy involves the basic right of a person to be let alone in his private affairs. *Roshto v. Hebert*, 439 So. 2d 428, 430 (La. 1983). Unwarranted invasion of a person's right of privacy may give rise to liability for the resulting harm. The determination of whether a person's conduct constitutes the tort of invasion of privacy depends on the facts and circumstances of each case. *Id.*; *Juge v. Springfield Wellness, L.L.C.*, 18-0736 (La. App. 1 Cir. 2/28/19), 274 So. 3d 1, *writ denied*, 19-0513 (La. 5/28/19), 273 So. 3d 309; *Bradix v. Advance Stores Company, Inc.*, 17-0166 (La. App. 4 Cir. 8/16/17), 226 So. 3d 523, 530.

The tort of invasion of privacy is directed at redressing the damage which an individual suffers when legally recognized elements of his right to privacy have been violated. *Tate v. Woman's Hosp. Foundation*, 10-0425 (La. 1/19/11), 56 So. 3d 194, 197. A cause of action for invasion of privacy lies under La. C.C. art. 2315 and occurs only when the defendant's conduct

is unreasonable and seriously interferes with the plaintiff's privacy interest. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. *Jaubert v. Crowley Post-Signal, Inc.*, 375 So. 2d 1386, 1389 (La. 1979).

Courts have held that when a person consents to the release of information, there is no invasion of privacy. *Tate*, *supra*. Moreover, a defendant's conduct is reasonable and non-actionable, even though it may slightly invade a plaintiff's privacy if the action is properly authorized or justified by the circumstances. *Parish Nat'l Bank v. Lane*, 397 So. 2d 1282, 1286 (La. 1981); *Juge, supra*; *Tatum v. New Orleans Aviation Bd.*, 11-1431 (La. App. 4 Cir. 4/11/12), 102 So. 3d 144, 146-47, *writ denied*, 12-1847 (La. 11/9/12), 100 So. 3d 838.

A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts. *Alessi v. Loehn*, 11-1914 (La. 12/16/11), 76 So. 3d 1142, 1143; *Jaubert, supra*; *Juge, supra*.

La. C.C.P. art. 1422 provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons

7

having knowledge of any discoverable matter. It is not grounds for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

La. C.C.P. art. 1469(2) provides:

A party may apply for an order compelling discovery if a party fails to answer an interrogatory submitted under Article 1457, or if a party, in response to a request for inspection submitted under Article 1461, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.

La. Dist. Court Rule 10.1(a) provides:

Before filing any motion to compel discovery, the moving party or attorney shall confer in person or by telephone with the opposing party or counsel for the purpose of amicably resolving the discovery dispute. The moving party or attorney shall attempt to arrange a suitable conference date with the opposing party or counsel and confirm the date by written notice sent at least five (5) days before the conference date, unless an earlier date is agreed upon or good cause exists for a shorter time period. If by telephone, the conference shall be initiated by the person seeking the discovery responses.

.

In ruling upon discovery matters, the trial court is vested with broad discretion, and, upon review, an appellate court should not disturb such rulings absent a clear abuse of discretion. *Succession of Dhaliwal*, 54,932 (La. App. 2 Cir. 3/1/23), 357 So. 3d 971; *Liles v. Great W. Cas. Ins. Co.*, 54,565 (La. App. 2 Cir. 7/13/22), 342 So. 3d 1160.

Ms. Cameron's first argument is that the trial court abused its discretion in failing to require St. Francis to produce a clean copy of the disciplinary report. We disagree. The record reflects that St. Francis produced the report which contains Nurse Hayes' written statement in April 2021, and no portion of her written statement was redacted. After receiving this disciplinary report, Ms. Cameron failed to request or subpoena a clean

8

copy of it to obtain the redacted information. Instead, Ms. Cameron waited until the questioning of a witness during the trial to request a clean copy of the report. Ms. Cameron's statement that the trial court placed "preconditions" on obtaining a clean copy of the disciplinary report is mischaracterized. Rather, the trial court simply stated that Ms. Cameron had numerous avenues to obtain a clean copy of the report as well as subpoena witnesses to testify at trial. We agree with the trial court that the issue over the production of a clean copy of the report should have been solved during discovery, and if Ms. Cameron wanted information about the redacted portions of the document, she should have subpoenaed those witnesses with knowledge of the document or filed a motion to compel St. Francis to produce a clean copy of the report prior to the start of the trial.

As to Ms. Cameron's remaining assignments of error, we find that the trial court correctly found in favor of St. Francis. Although Ms. Cameron suggests that the redacted contents of the report would shift the weight of evidence in Ms. Cameron's favor, we find that the disciplinary report is inconsequential in light of the remaining evidence and testimony. Throughout their testimony, Nurse Hayes and Ms. Cameron made opposing claims. Nurse Hayes maintained that no individuals were in the triage waiting area when she delivered Ms. Cameron's diagnosis. However, Ms. Cameron stated in her deposition she had family members with her, and other unknown persons were in the room as well when Nurse Hayes informed Ms. Cameron of her diagnosis. Ms. Cameron explained that Nurse Hayes verbally informed her of her diagnosis, whereas Nurse Hayes testified that she used gestures and nonverbal communication in delivering the diagnosis.

9

It is clear from our review that the trial court made factual and credibility determinations, and we cannot say that these conclusions are manifestly erroneous. Furthermore, both the record and Ms. Cameron's own testimony are silent as to any damages suffered by Ms. Cameron as a result of the alleged breach of privacy. Although she asserted in her petition she suffered humiliation, mental anguish, and embarrassment as to what occurred, Ms. Cameron, in her testimony, failed to articulate any expenses she incurred related to psychiatric attention or counseling. Instead, Ms. Cameron indicated that she received no such treatment, and she also failed to allege that she suffered any physical injury from the incident. We affirm the trial court's determination that Ms. Cameron failed to satisfy her burden of proof as nothing in the record suggests Ms. Cameron suffered any damages caused by the alleged invasion of privacy.

## CONCLUSION

Given the reasons expressed herein, we affirm the trial court's ruling in favor of St. Francis Medical Center dismissing Ms. Cameron's claims with prejudice. Costs of this appeal are assessed to Ms. Deskenna Cameron.

**AFFIRMED**.