439 So.2d 428 (1983)
E.R. ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert d/b/a The Iberville South.
Alfred ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert d/b/a The Iberville South.
Carlysle ROSHTO
v.
Gary J. HEBERT and Joyce S. Hebert d/b/a The Iberville South.
No. 82-C-1597.
Supreme Court of Louisiana.
October 17, 1983.
*429 William C. Kaufman, III, Seale, Smith & Phelps, Baton Rouge, Houston C. Gascon, II, Plaquemine, for applicant.
Robert L. Kleinpeter, Kleinpeter, Kleinpeter & Kleinpeter, for respondent.
LEMMON, Justice.
This is an action to recover damages for invasion of privacy arising out of defendants' publication in The Iberville South, a local weekly newspaper, of an article which allegedly concerned plaintiffs' private lives. The issue is whether a newspaper's verbatim reproduction, as part of a regular feature, of the original front page of a randomly selected 25-year old edition, constitutes invasion of a person's right to privacy, when the reproduced article accurately describes the details of a local criminal conviction for which the person was subsequently pardoned.
*430 The Iberville South for many years had reproduced the front page of randomly selected prior editions in a regular feature called "Page from Our Past." In 1973, the South reproduced the front page of the April 4, 1952 edition, which contained an article about the cattle theft trial of Carlysle, Alfred and E.R. Roshto, three brothers who are the plaintiffs in the instant litigation. Four years later, in 1977, the South reproduced the front page of the November 14, 1952 edition, which contained another article about the Roshto brothers, this time concerning the fact that they had been sentenced to prison after their convictions had been affirmed on appeal. Plaintiffs' names were not blocked out in either reproduction.
Plaintiffs then filed the present action, which asserted that the 1977 publication invaded their privacy, since the 25-year old matter was no longer of public concern. They further contended that they had served their term of imprisonment, had been law-abiding and hard working citizens of the community, and had ultimately received full pardons. Because each plaintiff admitted the truth of the articles at the trial on the merits, the trial judge rendered judgment for defendants on the basis that truth was an absolute defense. The court of appeal set aside that judgment, holding that truth is not a defense to an action for invasion of privacy. The court further held that defendants' action constituted an invasion of privacy for which each plaintiff was entitled to $35,000 in damages. 413 So.2d 927. We granted certiorari. 420 So.2d 439.
The right of privacy involves the basic right of a person to be let alone in his private affairs. S. Warren and L. Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193 (1890). Unwarranted invasion of a person's right of privacy may give rise to liability for the resulting harm. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979); W. Prosser, Law of Torts § 117 (4th ed. 1971); 3 Restatement of Torts 2d § 652 A (1977). One of the ways in which a person may subject himself to liability for damages for invasion of privacy is by giving publicity to a matter concerning the private life of another, when the publicized matter would be highly offensive to a reasonable person and is not of legitimate concern to the public. 3 Restatement of Torts 2d § 652 D (1977). The determination of whether a person's conduct constitutes the tort of invasion of privacy depends on the facts and circumstances of each case.
The particular form of invasion of privacy in this case is complicated by the implication of federal constitutional guarantees under the First Amendment of freedom of speech and of the press.[1] In Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Court addressed the constitutional guarantee in the context of publication of true statements of fact concerning a person's private life.
The Cox Broadcasting decision involved the television report of the name of a rape victim, despite a Georgia statute making it unlawful to publish a rape victim's name. The father of the victim who had been killed in the course of the crime sued the television station for damages, claiming that his right of privacy had been invaded by the broadcast. The Court held that a state may not impose sanctions on the accurate publication of a rape victim's name obtained from records of a public criminal proceeding in which the official court documents were open for public inspection.[2] The Court expressly declined to address the question of whether truthful publications may ever be constitutionally subjected to civil or criminal liability; instead, the Court focused on the "narrower interface between press and privacy that this case presents, namely, whether the State may impose *431 sanctions on the accurate publication of the name of a rape victim obtained from public recordsmore specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection."[3]
To the extent that the Cox Broadcasting opinion dealt with a current prosecution, that decision is not controlling in the present case.[4] On the other hand, the passage of a considerable length of time after the pertinent event does not of itself convert a public matter into a private one. Lapse of time is merely one of the factors to be considered in determining liability for damages for invasion of privacy by publication of an offensive but truthful matter which was once one of public concern and is still of public record. The circumstances surrounding the publication may also give rise to important factors to be considered.
For example, when a person convicted of a crime has served his sentence, changed his name, moved to a faraway city, concealed his identity, and led an obscure, respectable and useful life for 20 years, a newspaper reporter who institutes an investigation of the little-known citizen's past history and reveals the conviction in a newspaper published in the citizen's new community (far from the site of the crime), the reporter possibly may be liable for damages for invasion of privacy, even though the information is true and is contained in the public records.[5] The intentional nature of the disclosure (which likely involves an element of malice), the lack of the legitimate public interest in an ancient crime committed in a faraway town, and the disclosure of the private facts regarding the criminal's new name and address (after his concerted efforts to conceal his identity and maintain obscurity) are all pertinent factors in determining whether liability should be imposed for damages under the circumstances.[6]
The court of appeal relied on Briscoe v. Reader's Digest Ass'n, 4 Cal.3d 529, 93 Cal. Rptr. 866, 483 P.2d 34 (1971), in which the defendant published an article on hijacking and deliberately included plaintiff's name as a convicted hijacker, although plaintiff had since reformed and taken a place in respectable society. In the present case, however, the fact of defendants' convictions was publicized inadvertently as part of the publication of a randomly selected front page, which contained a number of articles. No one deliberately pointed the finger of blame at plaintiffs. There was no attempt to highlight the matter or to relate plaintiffs' past history to their present life and place of residence. There was also no suggestion of intentional behavior or malice on the part of the editor, who testified that he did not even know the Roshto brothers.[7] Moreover, the convictions had occurred in the community in which the newspaper was published, and the information was a matter of public record there. Finally, the community information contained on randomly selected front pages of former editions of a newspaper, when viewed collectively, is certainly a matter of legitimate *432 public interest, in the absence of extenuating circumstances regarding the publication.
The intermediate court was apparently concerned that newspapers are possibly being accorded a tremendous amount of freedom without being required to exercise a corresponding degree of responsibility, and arguably a balancing of rights and responsibilities should be required. When the published information is accurate and true and a matter of public record, this fact weighs heavily in such a balancing process, but a newspaper cannot be allowed unrestricted freedom to publish any true statement of public record, regardless of the purpose or manner of publication or of the temporal and proximal relationship of the published fact to the present situation.[8] This case, however, does not reveal any abuse in the purpose or manner of publication.
Defendants were arguably insensitive or careless in reproducing a former front page for publication without checking for information that might be currently offensive to some members of the community. However, more than insensitivity or simple carelessness is required for the imposition of liability for damages when the publication is truthful, accurate and non-malicious. Plaintiffs in the present case simply did not establish additional factors and circumstances to warrant the imposition of damages.
Accordingly, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated.
DIXON, C.J., concurs.
CALOGERO, J., concurs and assigns reasons.
WATSON, J., concurs in the result.
CALOGERO, Justice, concurring.
I respectfully concur, agreeing that the plaintiffs have not proven an actionable invasion of privacy. While the defendant's conduct need not be malicious, it must at least be injurious and highly offensive to the reasonable man, reckless in its disregard for its offensiveness, and without any independent justification for revealing the plaintiffs' identity. In this case, the plaintiffs have simply failed to show it.
NOTES
[1] La. Const. Art. I, § 7 (1974) provides a similar guarantee. However, La. Const. Art. I, § 5 (1974) also guarantees every person security against unreasonable invasions of privacy.
[2] The Georgia statute only provided a criminal sanction. However, civil liability is often determined by analogy to criminal statutes, when the court sets the standard of care and imposes the duty of maintaining that standard. See Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970).
[3] Justice Powell concurred, stating his view that truth is a complete defense in those invasion of privacy actions in which the interests sought to be protected are similar to those interests protected in defamation actions based on falsehoods injurious to a private individual.
[4] The court of appeal believed Cox inapposite, largely because it dealt with the publication of information of a current nature, whereas the information about the Roshto brothers was 25 years old. The court stated the Roshto story "had absolutely no value as a newsworthy item". 413 So.2d at 933.
[5] See Illustration 26 in Chapter 28A of Restatement, above.
[6] Indeed, under the postulated circumstances, the reporter may be liable for damages for intentional infliction of mental anguish.
[7] Plaintiffs claim, however, that E.R. Roshto, after the publication of the first article, went to the newspaper's office and requested that no more articles concerning their conviction for cattle theft be published. Mr. Roshto testified that he was assured by a man who identified himself as the editor that the Roshto name would be blocked out if any more such articles were published.

The trial judge, by finding there was neither actual or implied malice, apparently concluded that defendant editor did not receive a complaint about the first publication.
[8] Even if the Cox Broadcasting decision stands for the proposition that a newspaper has the right to publish true facts obtained from court records which are open for public inspection, there can be an abuse of that right.