606 So.2d 790 (1992)
Lucille Gandy GUGLIUZZA, et al.,
v.
K.C.M.C., INC., et al.
No. 92-C-0796.
Supreme Court of Louisiana.
October 19, 1992.
Concurring Opinion October 30, 1992.
Arthur R. Carmody, Jr., Wilkinson, Carmody, Gilliam & Hussey, Shreveport, for applicants.
Roland V. McKuneely, Jr., Bossier City, for respondents.
E. Ray Kethley, Shreveport, for Shreveport Chapter of the Society of Professional Journalists, amicus curiae.
Jack M. Weiss, Mark B. Holton, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Louisiana Press Ass'n, amicus curiae.
Daniel M. Waggoner, P. Cameron De-Vore, R. Bruce Easter, Jr., Davis Wright Tremaine, Seattle, Wash., for Home Box Office, Inc., Dow Jones & Co., Inc., Turner Broadcasting System, Inc., CBS Inc., and Time Inc., amicus curiae.
John S. Redpath, Jr., Shari L. Patrick, New York City, for Home Box Office, Inc., amicus curiae.
Richard J. Tofel, New York City, for Dow Jones & Co., Inc., amicus curiae.
David C. Kohler, Jennifer F. Weiss, Atlanta, Ga., for Turner Broadcasting System, Inc., amicus curiae.
Douglas P. Jacobs, New York City, for CBS, Inc., amicus curiae.
*791 Harry M. Johnston, III, Robin Bierstedt, New York City, for Time Inc., amicus curiae.
MARCUS, Justice.
On February 14, 1989, Sammie Joseph Gugliuzza was murdered in his place of business, a convenience store in Bossier City, Louisiana. On February 15, 1989, KTAL TV, a Shreveport television station, aired the following story concerning the murder:
There is another possible motive for the death of Sammie Gugliuzza which officers are not talking about. It is rumored on the streets that Gugliuzza had gambling debts and ties to organized crime and that his murder is some sort of pay-back.
Lucille and Anthony Gugliuzza, Sammie Gugliuzza's widow and major son, watched the broadcast from the Gugliuzza's home in the company of friends and relatives. Immediately following the broadcast, KTAL TV was asked to retract what the Gugliuzza's considered to be a false and defamatory story. Despite an alleged promise by the station to air a retraction and apology, neither was done. Lucille and Anthony Gugliuzza filed suit against KCMC, Inc. and KTAL, Inc., the owners of KTAL TV, and Dale Hoffman and Walt Buteau, employees of KTAL TV, alleging that defendants were liable for the defamation of plaintiffs' memory of the decedent and plaintiffs' emotional distress resulting therefrom.[1]
Defendants filed exceptions of no right of action and no cause of action. The trial judge sustained the exceptions and dismissed plaintiffs' petition with prejudice at plaintiffs' cost. The court of appeal reversed concluding that the petition "states a cause of action for defamation of [plaintiffs'] memory of the decedent under C.C. Art. 2315 and LRS 14:47." Relying primarily on this court's recent decision of Clomon v. Monroe City School Bd., 572 So.2d 571 (La.1990), the court determined that defendants owed plaintiffs a "special, direct" statutorily derived duty not to defame plaintiffs' memory of the decedent the breach of which was "easily associated with the very foreseeable risk of emotional and mental injury...." The court found that under the facts alleged there was "no justification for the creation of juristic limitations upon the principle of reparation underlying Civil Code Article 2315."[2] On defendants' application, we granted certiorari to review the correctness of this ruling.[3]
The issue for our determination is whether a widow and son have a cause of action for emotional distress arising from the defamation of their deceased husband and father.
To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Cangelosi v. Schwegmann Bros. Giant Super Mkts., 390 So.2d 196 (La.1980).
We have held that "[a] communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community. Defamatory communications violate one's right to a good reputation and give rise to a cause of action to recover damages because of the violation." Freeman v. Cooper, 414 So.2d 355, 358 (La.1982) (citation omitted). Once a person is dead, there is no extant reputation to injure or for the law to protect. Since the cause of action is intended to redress injuries flowing from harm to one's reputation, we conclude that to be actionable defamatory words must be "of and concerning" the plaintiff or, directly or indirectly, cast a personal reflection on the plaintiff. See Coulon v. Gaylord Broadcasting, 433 So.2d 429 (La.App. 4th Cir. 1983), writ denied, 439 So.2d 1073 (La. 1983); see also Pattison v. Gulf Bag Co., 116 La. 963, 41 So. 224 (1906) (parent has no standing to sue for defamation of a living daughter). In the present case, the *792 broadcast complained of does not concern plaintiffs nor does it reflect on plaintiffs' reputations. Absent an ability to allege this essential element, plaintiffs do not have a cause of action for defamation of their deceased relative.
This holding is in line with the common law rule which prohibits a cause of action for posthumous defamation unless the defamatory communication casts a personal reflection on the plaintiff.[4] Courts and commentators have opposed sustaining a cause of action for defamation of the dead based on several theories: (1) the cause of action for defamation is a personal one; (2) permitting the cause of action would hamper historical research and writing; (3) the difficulty in drawing temporal and plaintiff boundaries; (4) a logical extension of such a cause of action would require permitting a cause of action for defamation of another living person; (5) the cause of action is inconsistent with traditional notions of success on one's own merits; and (6) the cause of action is fraught with practical and procedural problems such as the inability to cross-examine the decedent to establish a defense, reconciling a plaintiff's memory with the decedent's actual reputation, and reconciling the varying memories of multiple plaintiffs. See generally Annotation, Libel and Slander: Defamation of Deceased Person as Ground of Action by Wife and Children, 132 A.L.R. 891 (1940); Note, LibelDefamation of Dead PersonInjury to Reputations of Surviving Relatives, 40 Colum.L.Rev. 1267, 1268-69 (1940); Note, supra note 4, 67 Tex.L.Rev. at 1530; Shaw, A First Amendment IssueDefamation of the Dead, N.Y.L.J., Apr. 6, 1987, at 1, col. 3. Additionally, we note that there is a constitutional dimension to sustaining a cause of action for defamation of the dead. Adding a new cause of action expands the class of potential defamation claimants and the type of injuries historically redressed by a defamation action. This expansion would have a correlative "chilling effect" on the freedom of speech and of the press protected by the first amendment of the United States Constitution[5] and article 1, section 7 of the Louisiana Constitution of 1974.[6] "Whatever is added to the field of libel is taken from the field of free debate." New York Times Co. v. Sullivan, 376 U.S. 254, 272, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). Although we do not rely solely on any one of these theories, we find that cumulatively they lend strong support for denying a cause of action for defamation of the dead.
Next, plaintiffs argue that their petition asserts a separate cause of action for "[m]alicious infliction of mental pain and anguish...." Plaintiffs maintain that under La.R.S. 14:47(2) defendants owed them a special, direct duty to refrain from broadcasting the defamatory news story which damaged their memory of the decedent. La.R.S. 14:47, a criminal statute, provides in pertinent part:
Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
* * * * * *
(2) To expose the memory of one deceased to hatred, contempt, or ridicule....
Plaintiffs claim that the defendants' breach of this duty and the plaintiffs' resulting emotional distress are sufficient allegations to sustain such a cause of action. To support their position, plaintiffs cite Clomon v. Monroe City School Bd., 572 So.2d 571 (La.1990).
*793 In Clomon, a motorist sued to recover for the severe emotional distress she sustained as a result of striking and killing a child departing a school bus designated for handicapped children. The bus driver, in violation of a statute,[7] failed to await the child's safe passage across the street and prematurely deactivated the bus signals. To determine whether the bus driver's violation of the statute was a breach of a direct, special duty owed to the motorist, this court reviewed "the purpose of the legislation [to] decide (1) whether [the plaintiff fell] within the class of persons it was intended to protect and (2) whether the harm complained of was of the kind which the statute was intended, in general, to prevent." Clomon, 572 So.2d at 577. This court found that the statute was intended to protect the motorist who had a corresponding duty to obey the bus driver's signals and that the motorist's emotional trauma could reasonably be anticipated from a violation of the statute. Clomon permitted the non-traumatically injured plaintiff to recover mental anguish damages from the tortfeasor who owed the plaintiff a "special, direct duty created by law...." Clomon, 572 So.2d at 575.[8]
Like the plaintiff in Clomon, plaintiffs in this case rely on a statute for imposing delictual liability. Under La.R.S. 14:47(2), it is a misdemeanor to maliciously publish "anything which tends ... [t]o expose the memory of one deceased to hatred, contempt, or ridicule...."[9]
Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability. Laird v. Travelers Ins. Co., 263 La. 199, 267 So.2d 714, 717 (1972). In determining the existence of a civil duty, our inquiry must focus on whether the statute was intended to protect a particular plaintiff from the type of harm which ensued. Boyer v. Johnson, 360 So.2d 1164, 1169 (La.1978); see also Laird, 267 So.2d at 717.
La.R.S. 14:47(2) defines the crime of malicious defamation of the memory of one deceased. Nothing in the statute's language or legislative history suggests an intent to expand the jurisprudentially developed civil definition of defamation. Rather, we find that section two recognizes society's interest in punishing conduct which the legislature has found reprehensible. See generally W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 111 at 779 (5th ed. 1984). The crime of defamation of the dead is, in effect, a crime against the state. The statute was not designed to protect an individual's interest in preserving his memory of a deceased person. Although we do not condone the anti-social and valueless conduct of defaming the dead, we find that this criminal statute does not impose a civil duty to refrain from such conduct. Thus, the statute cannot be the basis for creating a separate cause of action for the malicious infliction of mental anguish resulting from defamation of the dead.
In sum, we hold that plaintiffs do not have a cause of action to recover for their emotional distress arising out of defendants' broadcast which allegedly defamed plaintiffs' memory of the decedent.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The *794 judgment of the district court sustaining defendants' exceptions of no cause of action and no right of action and dismissing plaintiffs' petition with prejudice at their cost is reinstated.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Civil liability for defamation of the dead cannot be inferred from La.R.S. 14:47(2). This criminal provision cannot provide the basis of civil liability because it unconstitutionally abridges the freedom of expression guaranteed under our state constitution.
Article 1, § 7 provides:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for the abuse of that freedom.
This court has recognized that the freedom of speech and of the press embodied in our state constitution was designed to assure broad freedom of expression of opinion and was intended to adopt protections equally as expansive as those recognized by the United States Supreme Court prior to the adoption of our state constitution. Mashburn v. Collin, 355 So.2d 879 (La.1977). See also Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 26 (1974). Therefore, the United States Supreme Court opinions pre-existing the adoption of the 1974 Louisiana Constitution constitute the threshold, but not the final determinant, of the state constitutional right of freedom of expression.
Prior to the adoption of our constitution, truthful statements and expressions of opinion on matters of public interest [or "fair comment"] had been recognized as constitutionally protected forms of expression and therefore not subject to regulation by state libel and slander laws. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). See also Foote v. Sarafyan, 432 So.2d 877 (4th Cir.1982), writ denied 440 So.2d 736 (La.1983) (citing Mashburn, supra). Consequently, La.R.S. 14:47(2), which prohibits any publication or expression that tends "to expose the memory of one deceased to hatred, contempt, or ridicule" impinges on the state constitutional freedom of expression insofar as it attempts to criminalize truthful statements and expressions of opinions on matters of public concern.
For these reasons, La.R.S. 14:47(2) cannot be applied by analogy to create a delictual defamation right of action.
NOTES
[1] No claim was made for any pecuniary loss.
[2] 593 So.2d 845 (La.App. 2d Cir.1992).
[3] 597 So.2d 1017 (La.1992).
[4] In the United States, the common law rule denying a cause of action for defamation of a dead person has been uniformly followed in every jurisdiction which has addressed this issue. Note, Dead But Not Forgotten: Proposals for Imposing Liability for Defamation of the Dead, 67 Tex.L.Rev. 1525 n. 2 (1989); and B. Sanford, Libel and Privacy § 4.4, at 101 n. 37 (2nd ed. 1991).
[5] "Congress shall make no law respecting ... or abridging the freedom of speech, or of the press...." U.S. Const. amend. I.
[6] "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." La. Const. art. I, § 7.
[7] The bus driver violated La.R.S. 32:80, a traffic regulation contained in the Louisiana Highway Regulatory Act.
[8] The two concurring justices in Clomon stressed the importance of the plaintiff's status as a participant in the accident. Clomon, 572 So.2d at 579 (Justice Watson concurring; Justice Hall subscribing to the majority opinion and adding concurring reasons). Here, plaintiffs clearly are not participants in the injury causing event.
[9] In State v. Snyder, 277 So.2d 660, 668 (La. 1972) (on rehearing), we held that La.R.S. 14:47 was unconstitutional insofar as it attempted to punish public expression and publication concerning public officials, public figures, and private individuals who are engaged in public affairs. We noted that the statute may be constitutionally infirm to the extent that it punished the public expression of true statements concerning private individuals. However, we need not determine this issue at this time, since we base our decision in this case on other grounds.