MAX N. TOBIAS, JR., Judge.
^ The plaintiff/appellant, Vernon J. Tatum, Jr., appeals from a judgment in favor of the defendants/appellees, the New Orleans Aviation Board d/b/a the New Orleans International Airport (“NOAB”), New Orleans Jazz and Heritage Festival and Foundation, Inc. (“NOJHF”), Visual Jazz, Incorporated (“VJI”), and the XYZ Insurance Companies (“XYZ”).[1] For the reasons that follow, we affirm the judgment.
Mr. Tatum, representing himself, filed suit against the defendants for the alleged improper use of an image of his late mother, Ellyna C. Tatum, in a mural on the walls of the New Orleans International Airport terminal. Mr. Tatum’s “Petition for Unauthorized, Non-Approval, and Non-Consent Usage, of Deceased Mother’s Image, for Motive of Monetary Profit, (Tort),” filed in 2002, sought to recover more than $14,000,000 from NOAB and others in the form of damages and “royalties” for the alleged use of his mother’s image for “monetary profit” in a mural, “Two Way Pockey Away.” He alleged that NOAB and others reproduced |2the mural in the form of posters, fine art prints, and postcards “for monetary sale” without obtaining his consent. The petition fails to state his mother’s date of death, the tort theory under which he is entitled to recover, and the nature of his right to recover for the alleged use of his mother’s likeness.
The NOAB filed peremptory exceptions of no right of action and nonjoinder of a party, as well as a dilatory exception of vagueness or ambiguity, while the NOJHF filed a peremptory exception of no right of action and no cause of action and dilatory exceptions of lack of procedural capacity and vagueness. The trial court granted all the exceptions on 24 June 2011 and this timely appeal followed.
Mr. Tatum argues in his brief that he has a cause of action for the tort of invasion of privacy by appropriation of name or likeness. An invasion of privacy may occur in one of four ways: (1) one appropriates the name or likeness of another for one’s own benefit; (2) one unreasonably intrudes upon the physical solitude or seclusion of another; (3) one gives publicity which unreasonably places another in a false light before the public; and (4) one unreasonably discloses embarrassing private facts about another to the public. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388 (La.1979); Melder v. Sears, Roebuck and Co., 98-0939, p. 13 (La.App. 4 Cir. 3/31/99), 731 So.2d 991, 1000.
Violation of the right of privacy is actionable only when a defendant’s conduct is unreasonable and seriously interferes with another’s privacy interest. Jaubert, 375 So.2d at 1389. It is not necessary to prove that a defendant acted with malicious intent. Id. A determination of whether a defendant’s actions were ^reasonable is made by balancing the interests of the plaintiff in protecting his privacy from serious invasions with a defendant’s interest in pursuing his course of conduct. Jaubert, 375 So.2d at 1389. A defendant’s conduct is reasonable and non-actionable, even though it may slightly invade a plaintiffs privacy if the action is *147 properly authorized or justified by the circumstances. Parish Nat’l Bank v. Lane, 397 So.2d 1282, 1286 (La.1981).
The picture of the mural at the New Orleans International Airport is a street scene of at least 14 individuals, of which the late Ms. Tatum is possibly one. The mural appears to be a painting, not a photograph, and the late Ms. Tatum, if depicted in the mural, is not identified as Ms. Tatum.
As the court stated in Joslyn Mfg. Co. v. Koppers Co., 40 F.3d 750, 756 (5th Cir.1994):
[T]he term “real right” under the civil law is synonymous with proprietary interest, both of which refer to a species of ownership. Ownership defines the relation of man to things and may, therefore, be declared against the world. A personal right, on the other hand, defines man’s relationship to man and refers merely to any obligation one owes to another which may be declared only against the obligor. Reagan v. Murphy, 235 La. 529, 105 So.2d 210, 214 (1958). In other words, a personal right is the “legal power that a person (obligee) has to demand from another person (obligor) a performance consisting of giving, doing, or not doing a thing.” A.N. Yianno-poulos, Louisiana Civil Law Treatise, Property § 203, at 370 (3d ed.1991).
We find that the right to privacy is a personal right that belonged only to the late Ms. Tatum. Nothing in Louisiana law, statutorily or jurisprudentially, gives Mr. Tatum the authority to assert this right on behalf on his deceased mother, | ^specially as Ms. Tatum did not herself assert this right during her lifetime. Thus, the trial court properly granted the peremptory exceptions of no right of action filed by the defendants.
Finally, it appears that Ms. Tatum waived her right to privacy, insofar as her appearance in jazz funerals[2] and second lines[3] on the streets of New Orleans and elsewhere is concerned. As stated by Mr. Tatum in his petition:
I ¡¿Petitioner's deceased mother ... was the first female to be designated as “Grand Marshall” for traditional jazz funerals, in the city of New Orleans.
[[Image here]]
Petitioner’s deceased mother ... also provided entertainment as a performer, during The New Orleans Jazz Basketball games (a former N.B.A. franchise). *148 Held at the Louisiana Superdome during the 1970’s, with additional performances at The New Orleans Jazz And Heritage Festival.
Petitioner’s deceased mother ... unveiled her skills internationally, by performing in many European Countries.
Due to petitioner’s deceased mother’s accomplishments, Ellyna C. Tatum inherited public titles such as, “Ms. Jazz ” and “The Queen of Second Line ”, internationally. [Emphasis in original.]
Ms. Tatum held herself out as a public entertainer. One can only imagine the number of photographs that were taken of her during her career, both in the United States and abroad. By appearing in public on the streets of New Orleans, she placed herself in the public arena, one in which she obviously excelled and enjoyed.
Based on the foregoing, we affirm the judgment of the trial court dismissing Mr. Tatum’s case against the NOAB, NOJHF, VJI, and XYZ and with the parties paying their own costs.[4]

AFFIRMED.

. Only the New Orleans Aviation Board d/b/a the New Orleans International Airport filed an appellee’s brief,

. A "jazz funeral” is defined as the:
common name for a funeral tradition with music which developed in New Orleans, Louisiana.
[[Image here]]
A typical jazz funeral begins with a march by the family, friends, and a brass band from the home, funeral home or church to the cemetery. Throughout the march, the band plays somber dirges and hymns. A change in the tenor of the ceremony takes place, after either the deceased is buried, or the hearse leaves the procession and members of the procession say their final good bye and they "cut the body loose”. After this the music becomes more upbeat, often starting with a hymn or spiritual number played in a swinging fashion, then going into popular hot tunes. There is raucous music and cathartic dancing where onlookers join in to celebrate the life of the deceased. See http://en.wikipedia.org/wiki/ Jazz_funeral

. A "second line” is defined as:
a tradition in brass band parades in New Orleans, Louisiana. The "main line” or “first line” is the main section of the parade, or the members of the actual club with the parading permit as well as the brass band. Those who follow the band just to enjoy the music are called the "second line.” The second line’s style of traditional dance, in which participants walk and sometimes twirl a parasol or handkerchief in the air, is called "second lining.” See http://en.wikipedia.org/wiki/Second_ line_parades)

. To the extent that Mr. Tatum asserted additional assignments of error, these are preter-mitted as mooted by our ruling on the issue addressed hereinabove.