GUIDRY, J.
A succession representative appeals the dismissal of claims brought on behalf of the decedent's estate relative to the sale of the decedent's "life story." For the following reasons, we: (1) affirm the sustaining of the peremptory exceptions raising the objection of no cause of action; (2) reverse the denial of the special motions to strike; and (3) render judgment to grant the special motions to strike.
FACTS AND PROCEDURAL HISTORY
On February 19, 1986, Adler Berriman Seal, who was more commonly known as simply Barry Seal, died intestate. In 2014, Universal City Studios, LLC ("Universal"), through its Universal Pictures division, executed a multi-part agreement whereby it purchased rights to the life story of the decedent from the decedent's surviving spouse and children of his third marriage: Debbie Seal, Aaron Seal, Christina Seal Warmack, and Dean Berriman Seal (collectively "Seal defendants"). In the agreement, the Seal defendants also conveyed rights to their life stories and agreed to act as consultants for a feature film based on the decedent's life that was to be developed *594 and produced by Universal.[1]
Thereafter, the decedent's daughter from his first marriage, Lisa Seal Frigon, was appointed administratrix of his succession.[2] Following her appointment, Ms. Frigon filed a petition against Universal[3] and the Seal defendants, seeking to nullify the aforementioned agreement and further seeking damages on behalf of the decedent's estate for violation of privacy and publicity rights, misappropriation, false advertising, unfair trade practices, and conversion. Ms. Frigon also sought to enjoin any further development, production, or advertisement of the motion picture based on the decedent's life.
In response to the petition, Universal filed a peremptory exception raising the objection of no cause of action, seeking dismissal of Ms. Frigon's claims. Universal also filed a special motion to strike, pursuant to La. C.C.P. art. 971, as an additional basis for dismissal of Ms. Frigon's claims. The Seal defendants likewise filed a pleading asserting a peremptory exception raising the objection of no cause of action and a special motion to strike pursuant to La. C.C.P. art. 971 seeking the dismissal of Ms. Frigon's claims against them.
The trial court held a joint hearing on the peremptory exceptions and special motions to strike filed by Universal and the Seal defendants. On June 15, 2016, the trial court signed a judgment sustaining the peremptory exception raising the objection of no cause of action and dismissing Ms. Frigon's petition with prejudice as to Universal only. The trial court denied Universal's special motion to strike in that same judgment. The judgment made no reference to the exception and special motion to strike filed by the Seal defendants.
On June 27, 2016, Ms. Frigon filed a motion for partial new trial, seeking reconsideration of the peremptory exception sustained in favor of Universal, contesting the trial court's failure to allow amendment of the petition pursuant to La. C.C.P. art. 934, and requesting an award of costs and attorney fees pursuant to La. C.C.P. art. 971(B), as the prevailing party on the special motion to strike. On the proposed order attached to the motion, however, a diagonal line appears striking through a portion of the text of the order, along with an unsigned, handwritten annotation dated July 7, 2016, stating, "[s]ee order to vacate signed on June 28, 2016." No such order is in the record before us; however, the minute entry for June 28, 2016 recites: "Order to Vacate filed and signed. The Judgment signed on June 15, 2016 is VACATED. The Court will rule after further review of the relevant law and jurisprudence. Copy of order mailed to all parties."
On August 30, 2016,[4] the trial court signed a second judgment in which it decreed *595 that the special motions to strike filed by Universal and the Seal defendants were denied. The judgment also simply "granted" the peremptory exceptions raising the objection of no cause of action filed by Universal and the Seal defendants, but the judgment otherwise contains no decretal language pertaining to the exception. Ms. Frigon filed a motion for new trial in relation to the August 30, 2016 judgment on essentially the same grounds asserted in the previously filed motion for partial new trial, but she expanded her motion to include the rulings relative to the Seal defendants as well. The trial court scheduled a hearing on the motion for new trial for December 5, 2016.
Following the hearing held on December 5, 2016, two judgments were signed by the trial court. The first judgment, signed on February 14, 2017, denied the "motion for partial new trial" relative to granting the peremptory exceptions in the August 30, 2016 judgment and declared that "Plaintiff's petition against all defendants is DISMISSED WITH PREJUDICE ." The judgment additionally provides:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the issue related to the Motion for Partial new trial as it relates to reasonable attorney fees and costs associated with the Special Motion to Strike filed by Defendant, Universal City Studios LLC, which this Court denied in its Judgment signed on August 30, 2016 and ordered all parties to pay their own cost and attorney fees shall be GRANTED. The Defendant, Universal City Studios, LLC, was the prevailing party for the Special Motion to Strike. Pursuant to the Louisiana Code of Civil Procedure Article 971, a prevailing party on a special motion to strike shall be awarded reasonable attorney fees and costs.
The second judgment, signed February 15, 2017,[5] simply denied the plaintiff's motion for partial new trial; however, a diagonal line appears across the face of the judgment with an accompanying handwritten annotation stating: "See judgment signed on Feb. 14, 2017 ... File as Is."
The matter now comes before us pursuant to a devolutive appeal of the judgments signed on August 30, 2016 and February 14, 2017, filed by Ms. Frigon. Universal has answered the appeal requesting that this court "modify, revise, or reverse in part" the August 30, 2016 judgment to grant its special motion to strike, pursuant to which Universal would be entitled to an award of reasonable attorney fees and costs.[6] The Seal defendants also filed an answer to Ms. Frigon's appeal, requesting that the August 30, 2016 judgment, which denied their special motion to strike, be "corrected, revised, or reversed in part" to *596 grant their special motion to strike. And in line with that request, the Seal defendants further request that the February 14, 2017 judgment be "corrected, revised, [and/or] reversed in part" to award them reasonable attorney fees and costs as a prevailing party on the special motion to strike. Finally, the Seal defendants request an award of additional attorney fees and costs incurred for this appeal.[7]
DISCUSSION
No Cause of Action
In her first two assignments of error, Ms. Frigon claims that the trial court erred in sustaining the peremptory exceptions raising the objections of no cause of action filed by Universal and the Seal defendants and in failing to permit her to amend the petition to state a cause of action.
The purpose of the peremptory exception raising the objection of no cause of action is to determine the sufficiency in law of the petition. In ruling on a peremptory exception raising the objection of no cause of action, the court must determine whether the law affords any relief to the plaintiff if the factual allegations in the petition were proven at trial. Dural v. Louisiana State Board of Cosmetology, 08-0929, p. 3 (La. App. 1st Cir. 12/23/08), 4 So.3d 874, 877.
All facts pled in the petition must be accepted as true. CLB61, Inc. v. Home Oil Company, LLC, 17-0557, pp. 3-4 (La. App. 1st Cir. 11/1/17), 233 So.3d 656, 660. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. However, where evidence is admitted without objection, such evidence may be considered in determining whether a legal remedy exists. Emigh v. West Calcasieu Cameron Hospital, 13-2985, p. 4 (La. 7/1/14), 145 So.3d 369, 372. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. CLB61, Inc., 17-0557 at p. 4, 233 So.3d at 660.
Generally, an exception of no cause of action should not be maintained in part, so as to prevent a multiplicity of appeals, thereby forcing an appellate court to consider the merits of the action in a piecemeal fashion. If there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery. Robinson v. Papania, 15-1354, pp. 5-6 (La. App. 1st Cir. 10/31/16), 207 So.3d 566, 572, writ denied, 16-2113 (La. 3/13/17), 216 So.3d 808. Thus, if the petition sets forth a cause of action, none of the other causes of action may be dismissed *597 based on an exception pleading the objection of no cause of action. Further, any doubts are resolved in favor of the sufficiency of the petition. State, by & through Caldwell v. Astra Zeneca AB, 16-1073, p. 13 (La. App. 1st Cir. 4/11/18), 249 So.3d 38, 43-11 (2018 WL 1755535, at *7) ; Calloway v. Lobrano, 16-1170, p. 5 (La. App. 1st Cir. 4/12/17), 218 So.3d 644, 649.
In reviewing a trial court's ruling sustaining an exception raising the objection of no cause of action, appellate courts conduct a de novo review, because the exception raises a question of law, and the trial court's decision is based solely on the sufficiency of the petition. An exception raising the objection of no cause of action should be sustained only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Dural, 08-0929 at p. 3, 4 So.3d at 877.
In this case, Ms. Frigon has asserted claims of nullity, violation of the rights of privacy and publicity, unfair trade practices, misappropriation, false advertising, and conversion, but from her arguments below and on appeal, it is evident that the principal claim at issue is the right of publicity. Indeed, except for the claim of privacy, all of the other claims asserted by Ms. Frigon are premised on finding that such a right exists and that the decedent's succession possesses it.[8] It should be duly noted that Ms. Frigon is not appearing on her own behalf, but as the representative of the decedent's succession.
As administratrix, Ms. Frigon is deemed to have possession of all property of the succession and is required to enforce all obligations in its favor. La. C.C.P. art. 3211. Additionally, "[e]xcept as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration." La. C.C.P. art. 685. Comment (b) to Article 685 notes that "[t]his article is declaratory of the jurisprudence so far as it recognizes *598 the right of an administrator alone to institute and prosecute a personal action." The comment goes on further to observe that "[t]here is no reason today why a succession representative alone should not be able to enforce judicially all rights of the deceased, or of his succession, whether the action is personal, real or mixed." So whether the right of publicity is viewed as a "right" or "property," to the extent it is deemed to exist under Louisiana law and survives the decedent, then clearly under La. C.C.P. arts. 685 and 3211, Ms. Frigon would have authority to assert such a claim on behalf of the decedent's estate.
Right of Publicity
The right to publicity advocated by Ms. Frigon in this case is best described as being the right to control the commercial appropriation of her father's identity or public image. See Todd J. Rahimi, The Power to Control Identity: Limiting a Celebrity's Right to Publicity, 35 Santa Clara L. Rev. 725, 725 (1995). "[W]hile the attributes of human personality, like name, reputation, image, voice, and privacy, have traditionally been seen as extrapatrimonial rights without monetary value, today these rights are being increasingly [patrimonalized] and brought into commerce." Eric H. Reiter, Articles, Personality and Patrimony: Comparative Perspectives on the Right to One's Image, 76 Tul. L. Rev. 673, 675 (2002) (footnotes omitted).
As previously mentioned, Universal and the Seal defendants executed a multi-part agreement wherein the Seal defendants not only conveyed rights to their own life stories, but purportedly conveyed the rights to the life story of the decedent as well. Notably, one of the terms of the agreement required the Seal defendants to deliver "chain-of-title" for the life story rights so conveyed. Moreover, the life story rights conveyed covered events and occurrences from birth to the date of execution of the agreements, and possibly even after, to the extent such events or occurrences might be incorporated into the feature film to be produced by Universal. The Seal defendants also warranted that they were the sole owner of the life story rights conveyed and that they had the unrestricted right, power, and authority to enter the agreement conveying the life story rights of themselves and the decedent. It is only the conveyance of the rights to the decedent's life story that Ms. Frigon challenges in claiming a violation of the right of publicity.
In Zacchini v. Scripps-Howard Broadcasting Company, 433 U.S. 562, 566, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977), the United States Supreme Court recognized that a right of publicity arises under state rather than federal law. Where such a right is recognized under state law, the Court found that the First Amendment does not grant a privilege for violation of the right so granted. Zacchini, 433 U.S. at 579, 97 S.Ct. at 2859. In Prudhomme v. Procter & Gamble Co., 800 F.Supp. 390, 396 (E.D. La. 1992), a federal district court noted the possibility of a civil action to enforce a right of publicity being recognized in Louisiana, but we have not found nor have the parties revealed where such has actually occurred.
Judicial decisions are not intended to be an authoritative source of law in Louisiana; they are secondary to legislation. See A.N. Yiannopoulos, Louisiana Civil Law System § 35, p. 53 (1977); Deshotel v. Guichard Operating Company, Inc., 03-303, p. 2 (La. App. 3d Cir. 11/19/03), 861 So.2d 697, 703, aff'd, 03-3511 (La. 12/17/04), 916 So.2d 72. Hence, for us to hold jurisprudentially that a right of publicity exists would constitute an unwarranted intrusion into an area in which the legislature has not seen fit to act. See *599 Baynard v. Guardian Life Insurance Company of America, 399 So.2d 1200, 1202 (La. App. 1st Cir. 1981). Thus, in the absence of legislative action, we decline to supply a cause of action through jurisprudence that the law does not. See Eagle Pipe & Supply, Inc. v. Amerada Hess Corporation, 10-2267, pp. 39-40 (La. 10/25/11), 79 So.3d 246, 276. Accordingly, we find no error in the trial court's ruling sustaining the objection of no cause of action as to Ms. Frigon's claim of a right of publicity.[9]
Right of Privacy
The right to privacy, as recognized in Louisiana, has been held to embrace the following four interests: (1) appropriation of individual's name or likeness for the use or benefit of the defendant; (2) unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion; (3) publicity that unreasonably places plaintiff in false light before public; and (4) unreasonable public disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal Inc., 375 So.2d 1386, 1388 (La. 1979).
As pertaining to the right of privacy, Universal and the Seal defendants rely on a fairly recent Louisiana Fourth Circuit case wherein the court declared that the right of privacy is a personal right that belonged only to the decedent. Tatum v. New Orleans Aviation Board, 11-1431, p. 3 (La. App. 4th Cir. 4/11/12), 102 So.3d 144, 147, writ denied, 12-1847 (La. 11/9/12), 100 So.3d 838. In considering that holding, it is observed that the decedent's son in that case sued to receive compensation on his own behalf for the use of his mother's image in a mural on the walls of the New Orleans International Airport terminal. Tatum, 11-1431 at p. 1, 102 So.3d at 146. Despite the distinction that Ms. Frigon is attempting to assert the right on behalf of the estate of a deceased person, we agree with the reasoning of the Fourth Circuit that the right is strictly personal, and as such, died with the decedent.
As observed by the Louisiana Supreme Court, the right to privacy as recognized under Louisiana law, "protects the individual." Jaubert, 375 So.2d at 1387 n.2. Claims of privacy seek to protect against unreasonable intrusion into a person's seclusion, solitude, or private affairs. Perere v. Louisiana Television Broadcasting Corporation, 97-2873, p. 3 (La. App. 1st Cir. 11/6/98), 721 So.2d 1075, 1077. Consequently, claims of privacy have been viewed as personal to the individual and not heritable. See Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 792 (La. 1992) ; Tatum, 11-1431 at p. 3, 102 So.3d at 147. We therefore conclude that the trial court did not err in sustaining the objection of no cause of action as to the right to privacy claim asserted on behalf of the decedent's estate. See also Schultz v. White, 10-0488, p. 10 (La. App. 1st Cir. 10/29/10), 50 So.3d 949, 955 (wherein the court found that an obligation strictly personal to the decedent was not transmittable to his estate).
Special Motion to Strike
In conjunction with Ms. Frigon's third assignment of error, we will also consider the answers to the appeal filed by Universal and the Seal defendants, which all address whether the respective special motions to strike should have been granted by the trial court.
A special motion to strike presents a question of law. Appellate review of a question of law is simply a review of *600 whether the trial court was legally correct or legally incorrect. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders a judgment on the record. Starr v. Boudreaux, 07-0652, pp. 3-4 (La. App. 1st Cir. 12/21/07), 978 So.2d 384, 388.
The grounds for a special motion to strike are found in La. C.C.P. art. 971, which states, in pertinent part:
A. (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.
(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding.
...
F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:
(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:
...
(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.
Louisiana Code of Civil Procedure article 971 was enacted by 1999 La. Acts, No. 734, § 1. Section 2 of the Act provides:
The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.
Hence, Article 971 was enacted by the legislature as a procedural device to be used in the early stages of litigation to screen out meritless claims brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. Thinkstream, Inc. v. Rubin, 06-1595, p. 9 (La. App. 1st Cir. 9/26/07), 971 So.2d 1092, 1100, writ denied, 07-2113 (La. 1/7/08), 973 So.2d 730.
Under the shifting burdens of proof established by the article, the mover must first establish that the cause of action against him arises from an act by him in the exercise of his right of petition or free speech under the United States or Louisiana Constitutions in connection with a public issue. If the mover satisfies this initial burden of proof, the burden then shifts to the plaintiff to demonstrate a probability of success on the claim. Thinkstream, Inc., 06-1595 at p. 9, 971 So.2d at 1100.
*601 Free Speech in Connection with a Public Issue
In support of its special motion to strike, Universal argued that the premise of Ms. Frigon's suit-that her permission, as the administratrix of her father's estate, had to be obtained for the production of the feature film based on her father's life-"would have a profoundly chilling effect on free speech." While we make no express ruling regarding Universal's characterization of Ms. Frigon's suit, we do agree that her suit against Universal does arise from an act by Universal in furtherance of its right of free speech. As observed by the U.S. Fifth Circuit, it has long been recognized that the First Amendment protects film and "[a] corollary to this principle is that the First Amendment protects the act of making film." Turner v. Lieutenant Driver, 848 F.3d 678, 688 (5th Cir. 2017). And to the extent that the claims against the Seal defendants are identically related to the making of the feature film based on the decedent's life story, we likewise find that the suit impacts their exercise of free speech as well.
In addition to finding that the challenged actions of Universal and the Seal defendants were in the exercise of free speech, we must consider whether this exercise of free speech can be viewed as being in connection with a public issue or an issue of public interest, particularly since the infamous events of the decedent's life occurred over 30 years ago.
A similar question of contemporaneity and public interest was addressed in Roshto v. Hebert, 439 So.2d 428 (La. 1983). That case involved the publication by a newspaper of the front page of randomly selected prior editions. This practice by the newspaper brought to light the plaintiffs' convictions for cattle theft 25 years before, which had since been pardoned. Roshto, 439 So.2d at 430. While recognizing that there was a right to publish information that is true, accurate, and a matter of public record, the court held that there can be an abuse of that right in light of the purpose, manner, and timing of the publication. Roshto, 439 So.2d at 432 n. 8. In considering whether such an abuse occurred in Roshto, the court found, among other factors, that the information contained on the front pages of former editions of the newspaper, when viewed collectively, was certainly a matter of legitimate public interest. Roshto, 439 So.2d at 431-32. Of particular note to the matter before us is the court's pronouncement that "the passage of a considerable length of time after the pertinent event does not of itself convert a public matter into a private one." Roshto, 439 So.2d at 431.
In the present case, that pronouncement by the court in Roshto rings especially true. Universal[10] submitted copies of articles published in 1986, 1987, 1994, 1996, and 2000 to establish that the decedent's life story has remained an issue of public interest years after his death. Additionally, films about historical events, whether involving famous people[11] or notable events *602 involving relatively unknown people,[12] have proliferated in movie theaters in recent years.
Moreover, to the extent that information conveyed in the film relates to issues of drug trafficking and the actions of federal authorities, such activities unquestionably can be viewed as matters of public concern and interest, not just in Louisiana, but nationwide. "Reports of the investigation of crimes or matters pertaining to criminal activity have almost without exception been held to be newsworthy or matters of legitimate public interest as a matter of law." Lowe v. Hearst Communications, Inc., 414 F.Supp.2d 669, 674 (W.D. Tex. 2006), aff'd, 487 F.3d 246 (5th Cir. 2007) ; see also Cox Broadcasting Corporation v. Cohn, 420 U.S. 469, 492, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328 (1975) ("commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government"). As such, we find the record establishes that Universal and the Seal defendants met their burden of showing that Ms. Frigon's suit is an action against their exercise of free speech relative to an issue of public concern. Thus, the burden properly shifted to Ms. Frigon to prove her probability of success as to any of the claims asserted in her petition.
In cases where more than one claim is alleged in the petition, the courts examine the probability of success of each claim individually. If the plaintiff can demonstrate a probability of success on any of her claims, then the special motion to strike must fail. Shelton v. Pavon, 17-0482 at p. 6, 236 So.3d 1233, 1237 (La. 2017). As we have previously found that the trial court properly sustained the objection of no cause of action as to all the claims asserted by Ms. Frigon, that determination, in turn, means that Ms. Frigon does not have a probability of success as to any of those claims. We therefore find that the trial court erred in denying the respective special motions to strike. Accordingly, we will reverse that ruling by the trial court in the August 30, 2016 judgment and will render judgment granting the special motions to strike.
In addressing Ms. Frigon's final assignment of error, based on our rulings in this appeal, we find that the trial court properly held that Universal was the prevailing party on the special motions to strike and accordingly entitled to an award of reasonable attorney fees and court costs pursuant to La. C.C.P. art. 971(B). Moreover, as we have concluded herein that the trial court should have granted the special motions to strike of both Universal and the Seal defendants, we further hold that the Seal defendants are likewise entitled to an award of reasonable attorney fees and court costs pursuant to La. C.C.P. art. 971(B) as the prevailing party on their motion. Therefore, we will amend the February 14, 2017 judgment to so decree.
CONCLUSION
After careful consideration of the plaintiff's petition and governing law, we affirm that portion of the August 30, 2016 judgment *603 sustaining the peremptory exceptions raising the objections of no cause of action filed by Universal and the Seal defendants. We also grant the respective answers to the appeal filed by Universal and the Seal defendants to reverse the remaining portion of the August 30, 2016 judgment, wherein the trial court denied the special motions to strike, and herein, we grant those motions. Additionally, we amend the February 14, 2017 judgment to decree the Seal defendants as prevailing parties on their special motion to strike and thereby entitled to an award of reasonable attorney fees and costs. All costs of this appeal are cast to the appellant, Lisa Seal Frigon, as administratrix of the estate of Adler Berriman Seal.
ANSWERS TO APPEAL GRANTED; AUGUST 30, 2016 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT RENDERED GRANTING THE SPECIAL MOTIONS TO STRIKE FILED BY UNIVERSAL CITY STUDIOS, LLC AND DEBORAH DUBOIS SEAL, DEAN BERRIMAN SEAL, AARON CHRISTOPHER SEAL, AND CHRISTINA SEAL WARMACK; FEBRUARY 14, 2017 JUDGMENT AMENDED TO DECREE DEBORAH DUBOIS SEAL, DEAN BERRIMAN SEAL, AARON CHRISTOPHER SEAL, AND CHRISTINA SEAL WARMACK PREVAILING PARTIES ON THEIR SPECIAL MOTION TO STRIKE ENTITLED TO REASONABLE ATTORNEY FEES AND COSTS PURSUANT TO LA. C.C.P. ART. 971(B).
Pettigrew, J. concurs with the Results, and assigns Reasons.
I note the majority did not address the issues raised by appellant concerning La. R.S. 14:102.21, enacted in 2006, which provides, as follows:
A. It shall be unlawful for any person to use for the purpose of advertising for the sale of any goods, wares, or merchandise, or for the solicitation of patronage by any business the name, portrait, or picture of any deceased soldier, without having obtained prior consent to such use by the soldier, or by the closest living relative, by blood or marriage, of the deceased.
B. Whoever violates the provisions of this Section shall be fined not more than one thousand dollars, imprisoned for not more than one year, or both.
C. For purposes of this Section, "soldier" means any active duty member or former member of the armed forces of the United States including any member who was killed in the line of duty.
Does this statute create a privacy and/or publicity right inheritable by the surviving spouse and heirs of the soldier? Should the succession representative be allowed to amend her petition to state a cause of action? See La. Code Civ. Proc. art. 934.
The majority relies on Tatum v. New Orleans Aviation Bd., 2011-1431, p. 3 (La. App. 4 Cir. 4/11/12), 102 So.3d 144, 147, writ denied, 2012-1847 (La. 11/9/12), 100 So.3d 838, for the proposition that the right of privacy of a deceased person is strictly personal and, as such, dies with the decedent Barry Seal. Generally, I accept this as correct except if the legislature creates such a right. I note that the Tatum case, which was decided after the enactment of La. R.S. 14:102.21, did not address said statute.
I realize a criminal statute is not in of itself definitive of civil liability. Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 793 (La. 1992). However, they may be guidelines for the court in fixing liability. Moreover, to determine existence of a civil duty, this court's inquiry must focus on whether the *604 statute was intended to protect a particular plaintiff from the type of harm that ensued. Id. This inquiry was not done by the majority.
In my research, I do not find any jurisprudence that analyzes La. R.S. 14:102.21. Nor do I find any legislative minutes or history concerning said statute. It seems to have gone through the legislative process without comment and became law in 2006.
After reviewing La. R.S. 14:102.21, even if it did create an inheritable right of privacy or publicity, I do not believe it would be applicable to the instant case.
In my humble opinion, said statute's scope is limited to the facts of the soldier's military history. The case before us involves the life story of an alleged criminal and drug smuggler who was not killed while serving his country during military duty, but rather was killed while allegedly participating in alleged criminal activity. I am of the opinion the facts of this case do not fall within the scope of La. R.S. 14:102.21.
For these reasons I concur with the results reached by the majority.

In 2017, Universal released a movie titled "American Made," starring Tom Cruise that portrayed some of the more infamous details of the life of the decedent, a Louisiana native.

Initially, Ms. Frigon's appointment was only provisional, but was later made permanent.

Universal was incorrectly identified as "Universal Pictures, Inc." in the petition.

The record does not indicate that a hearing was held in conjunction with the rendering of the August 30, 2016 judgment. It appears that, in essence, the trial court granted a new trial on its own motion and without argument, which is allowed pursuant to La. C.C.P. art. 1971 and jurisprudence. We observe that the trial court's actions were timely, as the judgment had not yet become "final" so as to invoke the running of the appeal delay. See Horton v. Mayeaux, 05-1704, pp. 5-6 (La. 5/30/06), 931 So.2d 338, 341-42.
Notice of the June 15, 2016 judgment was mailed on June 17, 2016. Therefore, without other action by the parties, the delay for seeking a new trial was until June 28, 2016; however, as Ms. Frigon's motion for partial new trial was timely filed on June 27, 2016, the delay for seeking a new trial by the trial court or other parties was further extended until Ms. Frigon's motion was decided. See Horton, 05-1704 at pp. 6-7, 931 So.2d at 342. Additionally, it has been held that a trial court is not required to hold a contradictory hearing on a new trial granted pursuant to its own motion. Robertson v. Weinmann, 00-0799, p. 5 (La. App. 4th Cir. 2/21/01), 782 So.2d 38, 41 ; McCrea v. Mobil Oil Corporation, 95-0537, p. 7 (La. App. 4th Cir. 9/28/95), 662 So.2d 143, 148.

The actual date that appears on the judgment is February 15, 2016; however, it is evident that the wrong year was written, as the judgment further indicates that it emanated from the hearing held on December 5, 2016.

The answer actually requests that this court award Universal "its reasonable attorneys' fees and costs," but the record discloses that such has already been awarded to Universal by the trial court in a judgment signed on April 17, 2017, which judgment is the subject of a separate appeal before this court. See Frigon v. Universal Pictures, Inc., 17-0994 (La. App. 1st Cir. 18), 255 So.3d 591.

Universal also filed a motion to appeal the June 13, 2016 and February 14, 2017 judgments. Ms. Frigon filed an answer to the appeal by Universal and to the appeal filed by the Seal defendants, although the record contains no reference to an appeal filed by the Seal defendants. Nevertheless, pursuant to separate motions filed by Universal and the Seal defendants, this court issued orders on August 29, 2017 and November 8, 2017, to dismiss the appeals of Universal and the Seal defendants.
As for Ms. Frigon's answer, we observe that the relief requested in her answer is the same as presented in the instant appeal and in her separate appeal of the April 17, 2017 judgment, wherein the trial court awarded Universal costs and attorney fees pursuant to La. C.C.P. art. 971(B). Accordingly, we will address the merits of her answer in our review of the appeals she has filed.

The following is a summary of the substance of Ms. Frigon's allegations as to the other claims:
Nullity: Ms. Frigon asserts that the "personal name, nickname, photographic likeness, and Life Story Rights of [the decedent] are assets belonging to the Estate" and not to the Seal defendants individually, and as such, the Seal defendants "did not have the authority to sell the Life Story Rights of [the decedent] without authority of the Court where the Estate of [the decedent] was being administered."
Unfair Trade Practices: Ms. Frigon claims that Universal's failure to disclose its agreement with the Seal defendants, denial that she and her brother, Adler Berriman Seal Dodson, "had any protectable interest" in the life story rights of the decedent, and claim that information used was in the exercise of the right to free speech and available in the public domain constituted unfair trade practices.
Misappropriation: Ms. Frigon alleges that the Seal defendants "are using the Life Story Rights, including the photographic likeness of [the decedent] for their financial gain and commercial advantage" in marketing the feature film based on the decedent's life and that Universal's activities of promoting and marketing the feature film "constitute misappropriation of the identity and persona" of the decedent. We observe that Ms. Frigon's allegations regarding this claim appear to be partially duplicative of her privacy claim. See Slocum v. Sears Roebuck & Co., 542 So.2d 777, 779 (La. App. 3d Cir. 1989) and right to privacy discussion infra.
False Advertising: Ms. Frigon contends that Universal falsely advertised that it owns the decedent's life story rights and falsely marketed the feature film as the decedent's true life story without the consent or authority of the decedent's estate or the court.
Conversion: Ms. Frigon asserts that the Seal defendants failed to remit any of the proceeds they received when they sold the decedent's life story rights, which rights she alleges were the property of the decedent's estate, but instead converted the money for their own personal use and benefit.

Legislation has been proposed in the Louisiana Legislature to establish a right of publicity. See 2018 Original House Bill No. 276 of the Louisiana Legislature, which if enacted, would be referred to as the "Allen Toussaint Legacy Act" and would establish "a property right of identity" in Louisiana. See also 2017 Re-engrossed House Bill No. 415.

In their memorandum in support of their peremptory exception raising the objection of no cause of action and in support of their special motion to strike, the Seal defendants acknowledged that they could not "add materially to the excellent recitation of the law and facts set forth" by Universal, and as such, "[r]ather than attempt to expound on the authorities set forth" by Universal, they simply adopted Universal's legal argument.

Some notable examples being Dr. Martin Luther King Jr. in the movie "Selma" (2014), Howard Hughes in the movie "The Aviator" (2004), and Tupac Shaqur, in the movie "All Eyez on Me" (2017).

Again, some notable examples being "Sully" (a 2016 movie about an airline pilot who made an emergency landing on the Hudson River in New York), "Dallas Buyers Club" (a 2013 movie about an AIDS patient who helped smuggle drugs into the United States to help treat others with the disease), and "War Dogs" (a 2016 movie about two young men who chanced upon a contract with the Pentagon to provide weapons to America's allies in Afghanistan).